FLOYD A. JONES, Appellee, v. CITY OF DES MOINES et al., Appellants.

No. 44490.

February 7, 1939.

Fred T. Van Liew, and Bruce J. Flick, for appellants.

Chauncey A. Weaver, for appellee.

Hale, J.—The appellee herein, Floyd A. Jones, held the position of license collector under appointment first made by the city council on April 5, 1934, and continued in such position under a second appointment dated April 23, 1936. There seems to have been no definite term for this position but appointments were made periodically.

While appellee was still occupying the position, and on March 2, 1937, a written competitive examination was held by the civil service commission of the city of Des Moines for various positions, among them being that of license collector. For a long time prior to that time there had been no such examinations held, and this appointment had been made without competitive examination. The examination was duly certified by the civil service commission to the city council, and disclosed that the appellee applicant had not received what the board had determined to be a passing grade, 70 per cent. The council thereupon appointed others to the three positions as license collectors, and the appellee was not appointed.

Prior to the holding of the examination and after notice thereof had been given, the appellee herein prepared and filed an application on the form prescribed by the commission, accompanied by the required certificate of character.

On June 10, 1937, appellee filed with the city council a protest against its action, alleging therein that the record of the examination showed that the grade markings given him were

incorrect; and also that he was a World War veteran. In such protest he further stated that the protest was filed preliminary to the institution of legal proceedings in order to preserve and adjudicate his rights. On July 8, 1937, this protest was withdrawn, and withdrawal placed on file and no action taken. An answer to the petition of appellee was filed, but stricken on motion; and thereafter, on September 16, 1937, an amendment was filed to the return of the writ of certiorari, setting out in detail the various provisions of the ordinances of the city of Des Moines relative to the civil service.

Hearing on the petition was had, evidence taken, and judgment and decree entered sustaining the writ of certiorari and finding that the mayor and city council of the city of Des Moines had no authority to oust appellee, and that their action in so doing was void because of absence of legal jurisdiction; that the appellee was an overseas veteran and protected in his official position by the provisions of chapter 60 of the Iowa Code, 1935; and for costs. Due exception being taken, this appeal is brought before us.

The contention of the appellants mayor and council is, first, that there was no ouster, but that the council failed to appoint appellee because of his failure to pass the competitive examination under the civil service; second, that the mayor and city council acted legally because appellee voluntarily submitted himself to the civil service test which he failed to pass, and at a hearing in respect thereto before the civil service commission sought to have the same reviewed by the city council; and, third, that the civil service law, being chapter 289, Code of Iowa, 1935, applies specifically to the office of license collector.

It is undisputed that the appellee was a World War veteran, and hence, to oust him from a continuing position it would be necessary that there should be notice and hearing, under the provisions of section 1163 of chapter 60, Code, 1935, unless, as claimed by appellants, such are unnecessary by reason of the civil service statutes.

Code section 1163 is as follows:

"No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted [soldiers, sailors, marines, and nurses, enumerated in section 1159], shall be removed from

such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari.''

The position occupied by the appellee was a continuing one. There seem to have been no definite terms of appointment, but the position continued and the work was not temporary in character, but permanent. The council had authority to fix the time of the license collector for such period as it saw fit, or to make it a definite term; but, unless the civil service law permitted, it had no right to discharge except on charges, notice, and hearing. Slatter v. Herring, 217 Iowa 410, 251 N. W. 715.

It is urged by the appellants that this is not a case of ouster, which comes within the provisions of section 1163, but a case of an appointment, which would come under the provisions of the civil service statute. However, as indicated above, the position was a continuing one, with no definite term, and the appellee was occupying it under an indefinite appointment. It seems to us that this is clearly a case of ouster rather than appointment. Slatter v. Herring, supra, and cases cited.

It appears from the record in this case that for many years no civil service examinations had been held, and that this was the first, for some time at least, under the provisions of that act. This brings us to the question of whether or not the civil service law did supersede or modify the provisions of the soldiers preference law as to this position to such an extent that no notice or hearing was necessary in order to deprive the appellee of his position and install therein another applicant.

The soldiers preference law, being chapter 60 of the Code of 1935, was passed by the legislature and became a law on March 21, 1904, being an act of the Thirtieth General Assembly. The civil service statute, being chapter 289 of the Code, was enacted by the Thirty-second General Assembly, and became a law on March 29, 1907. The latter law (the civil service statute) contains a provision giving preference in appointment to soldiers, sailors, and marines, but it does not, directly or by implication, repeal or modify the provisions of the soldiers preference statute, especially section 1163 of such statute. See Hahn v. Clayton County, 218 Iowa 543, 255 N. W. 695. The Hahn case holds that another section of the Code was not a modification of the

law; nor do we think that, in any sense, can the civil service law be termed either a repeal or modification, but that the soldiers preference law remained as it originally was intended for the protection of veterans of the various wars.

Under this holding we find that the decree of the district court was correct in holding that the civil service statute did not exempt the appointing authorities from the requirements of charges, notice, and hearing, as provided in section 1163.

It is urged, however, that the appellee herein waived his rights under the preference statute by filing his application for the civil service examination and taking part therein. We cannot agree with the appellants in this contention, and do not think that the fact that appellee entered the examination was any relinquishment of his rights which he held, by virtue of being a veteran, in the position which he then occupied. The fact that he took part in an examination did not waive his rights to a position in which he was secure so long as he was capable and his duties were efficiently performed, even if it constituted an application for appointment under chapter 289, under the rules of the civil service commission.

Waiver is the voluntary and intentional relinquishment of a known right, and is a question of fact. Under the facts in this case, the district court by its decree found no facts constituting waiver and we agree in such finding.

We find that the action of the appellants constituted an ouster; that there was no waiver of appellee's rights under the soldiers preference law; and that, regardless of whether or not the civil service law [chapter 289, Code of Iowa, 1935] applied to this particular position, it did not in this case modify or affect the soldiers preference law to the extent that it did away with the necessity of charges, notice, and hearing as required by section 1163 of the Code.

We hold, therefore, that the decree of the district court was correct, and that it should be affirmed.—Affirmed.

MITCHELL, C. J., and HAMILTON, SAGER, STIGER, BLISS, OLIVER, and MILLER, JJ., concur.

RICHARDS, J., dissents.

RICHARDS, J. (dissenting)—The majority makes a finding that the civil service act did not *repeal* or *modify* the soldiers

preference law. Therefrom a too ready conclusion may have been drawn. For the finding brings about this situation—the court becomes confronted with two unrepealed enactments, in each of which the legislature has spoken relative to the subject matter of this controversy. The duty that then becomes the court's is to accord to each enactment, so far as possible, that which the legislature intended. It seems that in some measure this duty has escaped attention. The query whether there was a repeal is but a preliminary step, unless the answer be in the affirmative. In a negative answer inheres a second question, i. e., what legislative intent should be accorded each of the two acts. In no instance have we discussed the soldiers preference law as though it were isolated from all other legislative enactments. See Sorenson v. Andrews, 221 Iowa 44, 264 N. W. 562, Douglas v. City of Des Moines, 206 Iowa 144, 220 N. W. 72, Bender v. City of Iowa City, 222 Iowa 739, 269 N. W. 779.

The soldiers preference law, enacted in 1904, purposed to prefer a certain class for employment in public services. Its field covered employment by municipal corporations generally, counties, cities, towns and school districts. The Civil Service Law enacted in 1907 has to do with employment in a quite restricted field, solely in certain civil service positions found nowhere but in larger cities. Viewing the latter act as of the time it was being enacted it is clear that the legislature was contemplating that in the then future, dating from the enactment, no appointment whatever shall be made in the limited field of civil service positions excepting of applicants whose qualifications have been ascertained and established through civil service examinations. For in section 5701 the making of such appointments in the then future, by cities amenable to the civil service law, is expressly prohibited. True, the legislature spoke of exceptions to this prohibition, but limited them to temporary appointments without examination of peace officers in event of emergency arising by reason of fire, flood, storm or mob violence. There was no exception of veterans. But what affirmatively appears, touching on preference of veterans is this—a provision that in the then future honorably discharged soldiers, sailors, and marines shall be given the preference in all examinations and appointments *under the provisions of the civil service law.* That in the field of civil service positions veterans thus become amenable to the requirements of the civil service law after its

enactment, no one would seriously question. Whatever rights of preference veterans previously had in employment in positions that became civil service jobs, were terminated by the civil service law, and thereafter they had preferential rights therein only when they established their qualifications conformably with that law. Plaintiff would avoid all this by reason of certain facts. He says that despite the mandatory provisions of the civil service law the city failed to comply with its terms until 1937 and in the meantime in 1934 and 1936 without holding examinations the city had twice appointed plaintiff as license clerk. But the determining thing is the legislature's intention as to what rights plaintiff had to preference in this civil service position. Thereon plaintiff must depend. Upon the vital question, what did the legislature intend, the facts alleged throw no light. For it cannot be said that the legislature contemplated that cities would violate the civil service law, nor said that the legislature intended that by flouting the law any city could nullify the purposes and prohibitions the legislature had expressed and established. The rights appellant seeks to assert are purely contractual. Thurber v. Duckworth, 165 Iowa 685, 147 N. W. 158. In contractually dealing with the city the statutes conferring and limiting the powers of the city, as well as the ordinances of the city, entered into the contract as if written therein. With the civil service law incorporated it would clearly appear in plaintiff's contract for employment in this civil service position that he was availing himself of no right of preference the legislature intended he should have. To impute to the legislature an anticipation that cities would violate the law and create the fact situation that is in evidence is difficult. It would be an even more violent presumption, that there may be found in the civil service act an intention on part of the legislature that if there should be a violation of the law the result would be to confer upon those in enjoyment thereof priviliges and preferences withheld where there had been compliance and observance. It might be added that when plaintiff's employment began there was an ordinance of the City of Des Moines providing that all persons appointed after June 12, 1908, shall retain their places provided they later submit to civil service examination, and in case of failure to pass the examination they shall be discharged from service.

When two statutes relate to the same subject matter such

construction should be adopted, if possible, without doing violence to the language employed, as will permit both statutes to stand and to have force and effect. Moriarty v. Central Ia. R. Co., 64 Iowa 696, 21 N. W. 143. The foregoing is to the point that this cardinal rule might well be followed in this case.

One other matter not discussed in the majority opinion is this. The provisions of the civil service law peremptorily demanded that the appointment of the three license clerks be made from those who had successfully passed the examination. Three such appointments were made in 1937. Plaintiff, on examination, having failed to meet the standards demanded by the civil service law, it might be that compliance with section 1163 has been automatically dispensed with, as in the event of an abolishment of an office he was holding. Douglas v. Des Moines, 206 Iowa 144, 220 N. W. 72. The writer respectfully dissents.