WILLIAM BOWMAN, Appellant, v. VANE B. OVERTURFF and VANE B. OVERTURFF, Sheriff of Polk County, Appellees.

No. 45094.

NOVEMBER 12, 1940.

H. W. Hanson and Alex Miller, for appellant.

Francis Kuble, County Attorney, and James P. Irish, Assistant County Attorney, for appellees.

HAMILTON, J.—For eight years, ending January 2, 1939, C. F. Keeling was sheriff of Polk county, Iowa. At the beginning of each year, it was the habit and custom of Sheriff Keeling and other county officials of Polk county, according to the testimony, to submit to the board of supervisors of the county a list of their appointees for that year. Such a list, dated January 3, 1938, was submitted by Sheriff Keeling as his appointees for the year 1938, beginning January 3d. That list contained the names

of his chief deputy, jailer, matron and a long list of other deputies, a list of bailiffs and another list headed, "Jailers". The first name on this list of jailers was that of the plaintiff, William H. Bowman. Plaintiff objected to the introduction in evidence of this written list because no notice thereof was given to Bowman and he was not bound thereby, which objection was overruled, and error is assigned because of this ruling. There is no merit in this complaint. Such evidence was merely cumulative. Keeling went into same matter fully in his oral examination. The defendant, Vane B. Overturff, was elected, for a term of two years, sheriff of Polk county, commencing January 3, 1939. Bowman had served under Sheriff Keeling during the entire eight years that Keeling was sheriff and also under Sheriff Findley, who held this office prior to Keeling's tenure of office. When Overturff took office, he selected his own appointees which did not include Bowman, Overturff notifying Bowman on the 3d day of January, 1939, that his services would not be needed. Whether or not he selected another jailer to take the place of Bowman, the record does not show.

Bowman petitioned the district court of Polk county for writ of certiorari, claiming preference under the soldiers preference law and that he was wrongfully discharged. After a hearing, the trial court annulled the writ and in his written finding, in support of his ruling, states:

"This is a certiorari proceeding and relates to the soldier's preference law.

"Section 1159 of the Code of 1935 provides that honorably discharged soldiers and sailors and marines are entitled to preference over other applicants for appointment in the public service, subject to the exceptions provided in section 1165 of the Code which reads as follows:

"Section 1165: Exceptions. 'Nothing in this chapter shall be construed to apply to the position of private secretary or deputy to any official or department, or to any person holding a strictly confidential relation to the appointing officer.'

"Section 5197-d1 [5197.01, Code, 1939] imposes upon the sheriff the duty to wait on and care for all prisoners in his custody.

"Section 5189, directs the outgoing sheriff to deliver all

prisoners in his custody to his successor who shall receipt therefor.

"The soldier's preference law is limited in its scope. It does not give soldiers the preference in all cases, on the other hand it specifically states that soldiers shall not have the preference in the matter of holding certain positions.

"Among the exceptions are: 'deputies of any official or department. Any person holding a strictly confidential relation to the appointing officer'.

"Webster defines a deputy as 'one appointed as a substitute to act for another. A general deputy when appointed to exercise the whole of the powers of another official. And a special deputy when appointed to exercise some special function or duty. One who represents or acts for another.'

"As to the confidential relationship existing between the sheriff and his jailer: It is the duty of the sheriff to care for all prisoners. A great responsibility rests upon him in this matter. He may have in his custody desperate men and notorious outlaws. It is his sworn duty to prevent their escape. It is also his duty to protect prisoners from an inflamed citizenry or a howling, infuriated mob bent upon seizing and lynching a prisoner without form of trial and in defiance of the law. Such responsibility rests solely with the sheriff and nobody else. If he fails in either he is subject to removal.

"The sheriff cannot perform this duty in person. He must deputize another to act for him and in his stead. The jailer, as a representative of the sheriff, has charge of the jail. He carried the keys to the jail. In this capacity the jailer not only acts as the sheriff's deputy but in a confidential relationship. The Legislature has said that when such relationships exist the provisions of the soldier's preference law do not apply. They are classed as exceptions to the provisions of the chapter.

"The character or competency of William H. Bowman has not been questioned in this case. At times during his connection with the sheriff's office he has served as bailiff for this court, at one time for a period of one year. He has been a faithful public servant and this court takes judicial notice of the fact that he is reliable, loyal, competent and trustworthy.

"Judges do not appoint deputies or jailers. That is a

matter for the sheriff. The responsibility for proper appointments to each position rests solely with him. He must be guided by his conscience and act upon his best judgment. Mr. Bowman who had served as a member of the sheriff's staff for many years was appointed each time for a period of one year. On January 3rd, 1938, Sheriff C. F. Keeling appointed him as county jailer for the year, 1938, and submitted the appointment to the Board of Supervisors for approval. Mr. Keeling retired from office on January 3rd, 1939, at which time he was succeeded by Vane B. Overturff, who was elected at the preceding general election.

"Mr. Bowman was not appointed by Sheriff Overturff. In this action he invoked the aid of the Court to compel Sheriff Overturff, himself a soldier, to appoint him as county jailer under the soldier's preference law.

"In view of the fact that the position which Mr. Bowman seeks comes within the exceptions to the chapter relating to the soldier's preference law, the motion of the defendant to dismiss this action and annul the writ of certiorari is sustained and judgment will be entered in accordance therewith. To all of which plaintiff excepts."

Judgment was entered accordingly from which plaintiff has appealed.

We have examined the record with care and are abidingly satisfied that the evidence fully supports the trial court's finding and is in accordance with the letter and spirit of the statute and with our prior decisions. We deem it unnecessary to further discuss the case. Our views are fully set forth in the following decisions of this court: Allen v. Wegman, 218 Iowa 801, 254 N. W. 74; Hannam v. Iowa State Commerce Comm., 228 Iowa 586, 292 N. W. 820. The duties devolved upon Mr. Bowman, whether designated "jailer" or "turnkey", are those imposed by statute upon the sheriff, but which, by reason of his numerous duties, he was compelled to delegate to others. These duties were such as require skill, confidence and integrity and strict loyalty to his superior officer, the sheriff, and, while not designated as a "deputy", he was appointed as a substitute for the sheriff in the performance of the special duties to which he was assigned and, in the performance of those duties, he was

acting as a special deputy to the sheriff and he must be held to have sustained what is referred to in the statute, section 1165 of the 1935 Code, as "a strictly confidential relation", and that his appointment was from year to year.

The trial court was right and the judgment is, therefore, accordingly affirmed.—Affirmed.

SAGER, HALE, STIGER, BLISS, and MITCHELL, JJ., concur.