CHARLES ANDREANO, appellee, v. ELDER GUNTER, City Manager, et al., members of City Council, appellants.

No. 50400.

(Reported in 110 N.W.2d 649)

SEPTEMBER 19, 1961.

Leonard C. Abels, Corporation Counsel, and Don Hise, Assistant City Attorney, both of Des Moines, for appellants.

Philip Colavecchio and I. Joel Pasternak, both of Des Moines, and Carl Smedal, of Ames, for appellee.

THOMPSON, J.—On November 18, 1958, the plaintiff, who had then been a member of the department for about 17 years, was advanced to the position of assistant chief of police in Des Moines. On March 8, 1961, he was summarily discharged by defendant Gunter, the city manager of the City of Des Moines. This action of the city manager was approved by the city

council on March 13, 1961. On March 10, 1961, the plaintiff served a notice on the civil service commission of the city appealing the order of discharge under the provisions of chapters 365, the civil service statutes, and chapter 70, the soldiers preference statutes. After the city council had approved the order of discharge on March 13, the plaintiff served another notice of appeal. On March 20 the city manager filed charges and specifications against Andreano with the civil service commission, and on the same date the commission entered its order fixing March 27 next as the time for hearing the appeal. On March 24 plaintiff amended his notice of appeal challenging the jurisdiction of the commission to hear the appeal. On the same date the plaintiff filed a petition in certiorari in the Polk District Court, and on the same date, and ex parte, the court ordered the writ to issue and stayed all further proceedings of the city against the plaintiff.

Thereafter the matter came on for hearing in the Polk District Court, and after trial judgment was entered holding that defendant Gunter acted illegally in discharging the plaintiff peremptorily and without notice or hearing, setting aside the discharge and in effect at least reinstating the plaintiff in his position of assistant chief. From this judgment the defendants have appealed.

Involved in this case are chapters 70 of the Code of 1958, the soldiers preference statutes, and 365, the civil service laws of Iowa. The defendants assign four errors relied upon for reversal. As we view the case it is necessary only to consider the second and third assignments. We quote the second and third assignments:

"II The trial court erred in holding that Section 365.19 of the Code is not a specific, later-enacted statute which supersedes the provisions of Section 70.6 of the Code, which is a prior-enacted general statute, insofar as the two statutes are in conflict.

"III The trial court erred in holding that an Assistant Chief of Police of the City of Des Moines is not a 'person holding a strictly confidential relation to the appointing authority'

within the meaning of the exception contained in Section 70.8 of the Code."

I. It will be noted that assignment No. II rests upon a proper construction of sections 70.6 of the soldiers preference laws and 365.19 of the civil service statutes. Since we consider them of controlling importance in the case they are set out here, so far as material:

"70.6 Removal—certiorari to review. No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari."

"365.19 Removal or discharge of subordinates. The person having the appointing power as provided in this chapter, or the chief of police and the chief of the fire department may peremptorily suspend, demote, or discharge any subordinate then under his direction, for neglect of duty, disobedience of orders, misconduct or failure to properly perform his duties.

"Chiefs of police and fire departments of cities under the commission plan shall report suspensions, demotions, or discharges made by them to the superintendent of public safety within twenty-four hours thereafter.

"In cities under the manager plan, such report shall be made to the manager, unless the suspension, demotion, or discharge is made by him, in which case he shall report the same to the city council.

"In other cities, the report shall be made to the mayor.

"Such report shall be in writing, stating the reasons for such suspension, demotion, or discharge, and a copy thereof shall promptly be given to the clerk of the commission. The person or body to whom the report is made shall affirm or revoke such suspension, demotion, or discharge, according to the facts and merits of the case."

Some history of these statutes is pertinent. The soldiers preference law was first enacted by the Thirtieth General Assembly, in 1904. The removal provision, with which we are

here concerned, was substantially the same then as it now appears in section 70.6. The civil service statute, 365.19, pertaining to removals from office first appeared as section 14 of chapter 48 of the Acts of the Thirty-second General Assembly, in 1907. This enactment, however, pertained only to cities organized under the commission form of government. The Thirty-fourth General Assembly, in 1911, amended the section on removals, and it was again amended a few years later to bring it substantially within its present form. But each of these amendments limited the application to cities under the commission plan. It was not until 1921 that the Thirty-ninth General Assembly by section 4 of chapter 216 of its Acts made it applicable to city manager plan cities. Two years later the statute was again amended by the Acts of the Fortieth Extra General Assembly, section 13 of S. F. 155, so that it appeared in its present form as set out above. This amendment made it applicable to all cities, and so far as city manager plan cities are concerned changed the power of removal from the "city manager" to "the person having the appointing power". But since the city manager has the appointing power there was no change in the effect or meaning of the law. He has the removal power under the statute.

We must start with the holding that chapter 70 is a general statute governing all appointments and removals to and from positions in the public service in Iowa; and chapter 365 is a special statute relating only to civil service appointments and removals in cities. We so held in Ervin v. Triplett, 236 Iowa 272, 275, 276, 18 N.W.2d 599, 601. Nor does the plaintiff otherwise contend. His argument is based on the contention that sections 70.6 and 365.19 are not in conflict. Clearly 70.6 is a general statute and section 365.19 is a special one, both by precedent and logic. It is also well-settled law that when a general and a special statute are in conflict and cannot be reconciled the special one prevails. Shelby County Myrtue Memorial Hospital v. Harrison County, 249 Iowa 146, 152, 153, 86 N.W.2d 104, 108, 109, and citations.

Nor do we think it can fairly be held that there is no conflict between sections 70.6 and 365.19. Section 70.6 says

no person holding a public position under the soldiers preference law may be removed except for incompetence or misconduct shown after a hearing. If this statute governs the present situation, the plaintiff could not be removed except after notice and hearing. But section 365.19, which in addition to being a special statute is also a later enacted one, says anyone under civil service may be peremptorily discharged by the person having the appointing power, with following provisions for appeal to the civil service commission; and, of course, a later appeal from the holding of the commission to the courts available. The first statute says no one may be removed without notice and hearing; the second, special and later enacted, says anyone under civil service may be summarily discharged. Many persons under civil service will also have rights under the soldiers preference law as has the plaintiff here. This must have been understood by the legislature when it enacted and amended the present section 365.19; yet, although it would have been easy to say that section 365.19 did not apply to those qualified under the soldiers preference law, it did not do so. The section is broad; it gives to the person having the appointing power the right to peremptorily discharge "any subordinate then under his direction * * *", without exception. We are concerned with the intent of the legislature; but in determining such intent, we apply certain rules, and one of these, well defined and often applied, is that a special statute takes precedence if the two cannot be reconciled. The only way in which these two statutes under consideration could be reconciled is by ignoring the plain language of the special one, section 365.19, and reading into it an exception which the legislature did not see fit to place there.

The rule giving precedence and authority to the special statute in case of conflict is well settled; and we think it hardly admits of fair debate that there is a conflict here. The solution would then be easy but for the language of certain cases cited and relied upon by the plaintiff, which seems to say that there is no conflict between the soldiers preference law and the civil service statutes. One of these, Geyer v. Triplett, 237 Iowa 664, 22 N.W.2d 329, is easily distinguished. It involved an appoint-

ment rather than a removal. It is true we said in broad terms that we saw no conflict between the soldiers preference law and the civil service law, and that the civil service law neither modifies nor repeals any of the provisions of the soldiers preference law. Loc. cit. 237 Iowa 668, 669, 22 N.W.2d 332. Since the question was one of appointment rather than removal, this language was no more than dictum.

However, in two other cases the question of removal was involved. These are Ervin v. Triplett, 236 Iowa 272, 18 N.W.2d 599, and Jones v. City of Des Moines, 225 Iowa 1342, 283 N.W. 924. In the Ervin case a city detective had been demoted without any charges against him, and without any provision for a hearing, either before or after his removal from his position. This court said:

"We do not find as between the special statute, section 5697 [of the 1939 Code] (the civil-service statute) and the general statute, found in chapter 60 [now chapter 70] (the general Soldiers Preference Act), that there is any inconsistency between the two which would require our holding that the special statute would control over the general statute.

"In fact, there is nothing in the civil-service statute, and particularly that which relates to soldiers preference, which is inconsistent with the provisions found in section 1163 [now section 70.6, supra]." Loc. cit. 236 Iowa 276, 18 N.W.2d 601.

It will be noted that the court there seemed to be considering a conflict between section 70.6 and section 365.10, which then appeared in the Code of 1939 as section 5697. This is the statute in the civil service law which specifically gives preference in appointments to honorably discharged veterans of the armed services. Here we are considering the conflict between sections 70.6 and 365.19; that is, between two removal statutes rather than between the removal statute under the soldiers preference law and the appointment statute, section 365.10, under the civil service law. It is true there is following language, as quoted, which makes the broad statement that there is nothing in the civil service statute inconsistent with section 70.6. But the entire discussion at no point mentions the section 365.19, then section 5703 of the 1931 Code. Rather, it states specifically that

there is no conflict between 70.6 and 365.10, which of course is correct. But the entire opinion so far as it deals with the subject of general and special statutes leaves the impression that no attention was given to section 365.19, or to the matters bringing it into conflict with section 70.6, which we have pointed out above.

The same weakness appears in Jones v. City of Des Moines, supra, 225 Iowa 1342. There we did not mention the rule of law applying to general and special statutes and giving the latter preference when they cannot be reconciled. After referring to the soldiers preference law, we said: "The latter law (the civil service statute) contains a provision giving preference in appointment to soldiers, sailors, and marines, but it does not, directly or by implication, repeal or modify the provisions of the soldiers preference statute, especially section 1163 [now section 70.6] of such statute." Loc. cit. 225 Iowa 1345, 1346, 283 N.W. 924, 925. Again, the court seems to have been stressing the civil service section, 365.10, which gives precedence in appointments to veterans of the armed forces. Reference to it is also followed by the broad statement that there is nothing in the civil service law which repeals or modifies the earlier Soldiers Preference Act. This language has the same lack of convincing force as that quoted above from Ervin v. Triplett. Apparently no thought was given to the general and special statute rule and no answer is made to the reasons we think clearly show a conflict between sections 70.6 and 365.19.

Hahn v. Clayton County, 218 Iowa 543, 255 N.W. 695, although not cited by the plaintiff, supports his position. It concerned a county engineer who claimed exemption from removal because he was protected by the soldiers preference law, a later enacted statute giving the board of supervisors power to remove him at any time notwithstanding. We said that repeals by implication are not favored, and there was no such repugnancy between the two statutes that the later must be held to have repealed the earlier. Again the rule of precedence to the special statute over the general was not mentioned; but the case does hold that a later enacted statute giving absolute power

of removal did not modify or change what is now our section 70.6. Loc. cit. 218 Iowa 551, 255 N.W. 699.

 It is our present conclusion that Ervin v. Triplett, 236 Iowa 272, 18 N.W.2d 599, Jones v. City of Des Moines, 225 Iowa 1342, 283 N.W. 924, and Hahn v. Clayton County, 218 Iowa 543, 255 N.W. 695, are unsound so far as they hold or may be implied to hold that there is no conflict between sections 70.6 and 365.19 of the Code of 1958. To the extent indicated they are disapproved. Although the Soldiers Preference Act was enacted in 1904, the legislature on several occasions thereafter passed, amended and enlarged the civil service laws, each time giving peremptory power of removal. We must assume the legislature when it did this was cognizant of the provisions of the veterans preference laws. In section 365.19 we find specific provisions giving the power of summary removal not only to the appointing officer but to the chiefs of the police and fire departments. The statute is meticulous and precise in stating the manner in which this may be done. When the removal is made by the chief of the department, he must within twenty-four hours report the discharge, with his reasons therefor; and the removal shall then be affirmed or revoked by the person or body to whom the report is made.

Preceding section 365.19 is section 365.18, which says no person holding civil service rights shall be removed arbitrarily, "except as otherwise provided in this chapter". The exception then follows in section 365.19. After 365.19 comes section 365.20, providing for an appeal; and sections 365.21, 365.22 and 365.23 further implement the appeal so provided. Nowhere in these statutes is there any intimation that they apply only to those civil service employees who do not have veterans preference status. They are broad and comprehensive.

It is of great significance that the legislature saw fit to provide in section 365.10 of the civil service law that in matters of examinations and appointments under that law, veterans should be given preference, if otherwise qualified; but when it reached the question of removals or discharges, in section 365.19, no such preference was given. The lawmaking body had the matter of preferences to veterans in mind, as shown

by section 365.10; and so its omission in section 365.19 points clearly to its intention that the latter statute should apply to "all subordinates" as the statute states. We find language supporting our conclusions also in section 365.27, which provides that "The civil service commission shall have jurisdiction to hear and determine all matters involving the rights of civil service employees, and may affirm, modify, or reverse any case on its merits." There is no exception here of those employees who may have preference in appointment under the soldiers preference law.

We are dealing here, as in all cases of statutory construction and meaning, with the intent of the legislature as expressed in what it said. That it may well have considered that in some cases, particularly of police or fire department officers who for some reason are derelict in their duty, the public protection and welfare justified a summary removal rather than leaving a negligent or possibly corrupt officer on duty while awaiting a hearing is entirely understandable. It went so far as to give the right of removal not only to the appointing officer but to the chiefs of the police and fire departments, who might be closer to the scene of activity and have prompter knowledge of derelictions. The rights of the employee so removed are carefully protected; he is given every opportunity for a prompt hearing before the civil service commission, and has his appeal to the courts if he is so advised. If it is held he was wrongfully removed, he may be entitled to compensation in accordance with the determination of the commission under section 365.27. We think the legislature intended to do just what it said; that is, to give the power of peremptory removal, with right of appeal, the provisions of the soldiers preference act notwithstanding.

The patriotic service of the veteran is rewarded by giving him preference in appointment, under section 365.10. Thereafter the legislature, conceivably in the interest of the public safety and general welfare, has said that he, as a subordinate, may be summarily removed, with an effective means of appeal and hearing provided. The question is of great importance to the proper administration of city governments; and, while we

might have avoided it because reversal is required on another ground, we think the law should be clarified so that cities may exercise the powers which the legislature intended they should have.

II. Another reason appears requiring reversal of the holding of the trial court. Defendants' third assignment predicates error upon the ruling of the trial court that the plaintiff, at the time of his removal, was not "a person holding a strictly confidential relation to the appointing authority."

Here another section of the soldiers preference law becomes important. Section 70.8 is this: "Exceptions. Nothing in this chapter shall be construed to apply to the position of private secretary or deputy of any official or department, or to any person holding a strictly confidential relation to the appointing officer."

It is the defendants' contention that the plaintiff, as an assistant chief of police, was a "person holding a strictly confidential relation to the appointing officer." Section 70.8 has been before this court in many cases. We have held that employees are in a confidential relationship to the appointing officer, and so not entitled to preference under the other provisions of the soldiers preference law, in Bianco v. Mills, 248 Iowa 365, 80 N.W.2d 753 (an assistant city attorney); Neargard v. Akers, 232 Iowa 1337, 5 N.W.2d 613 (a junior examiner in the state auditor's office); Warner v. Akers, 232 Iowa 1348, 5 N.W.2d 603 (a junior examiner in the state auditor's office); Klatt v. Akers, 232 Iowa 1312, 5 N.W.2d 605, 146 A. L. R. 808 (a senior examiner in the state auditor's office); Brown v. State Printing Board, 230 Iowa 22, 296 N.W. 719 (the state superintendent of printing); Bowman v. Overturff, 229 Iowa 329, 294 N.W. 568 (a jailer in the Polk County sheriff's office); Hannam v. Iowa State Commerce Commission, 228 Iowa 586, 292 N.W. 820 (an inspector in the motor transportation division of the commerce commission); and Allen v. Wegman, 218 Iowa 801, 254 N.W. 74 (head bookkeeper in the state treasurer's office). In the three Akers cases and in Allen v. Wegman there were dissents, from some of which the plaintiff quotes at length.

We think, however, that we need not review the

1342

soundness of the majority and dissenting opinions in the cases referred to in the last sentence above. It is necessary only to follow the principles laid down in Brown v. State Printing Board, supra, 230 Iowa 22, 296 N.W. 719, to arrive at the correct application of section 70.8 to the case at bar. We there adopted by quoting with approval as the correct legal principle applicable from Scott v. Brown, 90 Ind. App. 367, 378, 157 N.E. 64, 68, this language: "The term 'confidential relation' is a very broad one and is not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence." We also said: "This statement is frequently found in texts (see 15 C. J. S., page 822) and in decisions in cases of this kind." Loc. cit. 230 Iowa 23, 24, 296 N.W. 720. The same statement from Scott v. Brown, supra, was quoted and approved in Allen v. Wegman, supra, loc. cit. 218 Iowa 810, 254 N.W. 79. We also said in Brown v. State Printing Board, supra: "Where duties are not merely clerical and require skill, judgment, trust and confidence, the courts are inclined to regard the appointee to whom such duties are delegated as holding a strictly confidential relation to the appointing officer or board." Loc. cit. 230 Iowa 24, 296 N.W. 720.

These rules were laid down in the Brown case and approved by a unanimous decision of this court. They express the law as it now stands in Iowa, and we consider them sound and reaffirm them. It remains to be seen whether they apply to the plaintiff.

Section 15-99 of the Municipal Code of the City of Des Moines defines the duties and obligations of an assistant chief of police. These include participation in the formulation of departmental policies and regulations. An assistant chief directs and coordinates all line operations of the department including patrol, criminal and juvenile investigation, vice control and traffic; takes immediate command in case of a major emergency or occurrence; confers with citizens groups with respect to complaints, improvements in service and in explaining the activities and functions of the department; cooperates with and consults other law-enforcement agencies; and takes part in con-

ferences with the chief of police in resolving departmental policy and procedural problems. Also, and importantly, an assistant chief may direct all activities of the department in the absence or disability of the police chief.

If we apply the rules laid down in Brown v. State Printing Board, supra, and other cases, it is clear that the plaintiff held a strictly confidential relation, not only to the head of the department but to the city manager, who under section 365.15 was the appointing officer. We held in Bowman v. Overturff, supra, 229 Iowa 329, 294 N.W. 568, that a jailer was in such a relation to the sheriff. An assistant chief of police, who helps to formulate departmental policies and regulations, has immediate charge of many of the most important activities of the department, takes immediate command in emergencies, and may in the absence or disability of the chief direct all activities is surely on a higher and more responsible and confidential level than a turnkey in a county jail. It will not do to say that the plaintiff was not in such a relation because he had not performed many of the functions delegated to him by the Municipal Code, particularly that he had never acted as chief. It is the duties delegated to him by the city ordinance that must govern and to which we must look to ascertain the nature of his relationship to the appointing officer. These clearly place him in a relation of trust and confidence. His position was an important one, clearly involving duties and giving him powers which placed him in such a relationship. We think a chief of police would ordinarily be clearly within the class of those holding confidential relationships to the appointing officer; and so necessarily would an assistant be who might at any time assume the duties of the chief. While at one point refusing to concede that a chief of police is in a confidential relation to the city manager, the plaintiff does admit that the legislature so considered. He says in his brief: "Recognizing that a confidential relationship between the Chief of Police and the City Manager existed, they [the legislature] eliminated the position of Chief of Police from the Civil Service as set forth in sections 365.13 and 365.14, Code of Iowa, 1958." He then urges that there is a distinction because the chief of police may be ap-

pointed from the members of the force without an examination, while in all other ranks a competitive examination for promotion is required under the civil service statutes. The contention that the plaintiff did not have a position of trust and confidence because he was appointed only after an examination is entirely lacking in merit. We can see no basis for saying that one who has successfully passed a qualifying examination can, under no circumstances, be held to hold such a position. In fact, there seems if anything more reason why an examination should be required for such positions.

The plaintiff cites and relies upon Ervin v. Triplett, 236 Iowa 272, 18 N.W.2d 599, supra, and State ex rel. Blaski v. Fisher, 194 Minn. 75, 259 N.W. 694. The Ervin case is readily distinguishable on the point of confidential relationship. It involved the demotion of a city detective to the rank of patrolman, and is authority only for the proposition that a detective does not occupy a position of trust and confidence. Obviously there is a broad difference between such an officer and an assistant chief of police who has the powers and is charged with the duties defined by the Des Moines ordinances for that office.

State ex rel. Blaski v. Fisher, supra, is a Minnesota case which holds that an assistant chief of a fire department does not hold a position of trust and confidence. The Minnesota statute on confidential relationships was identical with our section 70.8, supra. However, the duties of an assistant chief of the particular fire department involved in the Minnesota case were by no means as extensive and did not involve the elements of trust and confidence imposed upon and given to the plaintiff by the Des Moines ordinances. For example, in the Minnesota case the assistant chief did not take part in formulating departmental policy, and he did not act as head of the department when the chief was absent or incapacitated. At least the opinion does not so show. We are satisfied with our own holdings on the question, and that the plaintiff comes much more clearly within the definition of "trust and confidence" than did those involved in many of the cases cited in which we have found

such a relationship. The trial court was in error in failing to so find here. *

III. The holdings in Divisions I and II above determine that plaintiff's rights are to be decided in accordance with the civil service law. Sections 365.19 through 365.24 provide the proper procedure on appeal from the discharge of the plaintiff. He has served notice of appeal, and a time for hearing was fixed by the civil service commission in accordance with section 365.23. This hearing was stayed by the district court of Polk County, and the time set is now long past. Within ten days after issuance of the procedendo in this case the commission shall fix another date for hearing the appeal, which shall be not less than five nor more than twenty days thereafter, also fixing the place for hearing and shall notify the parties in writing of the time and place so set. The notice shall also contain a copy of the specifications unless the plaintiff has previously been given notice thereof pursuant to sections 365.22 and 365.23. The matter shall then proceed to hearing under the provisions of the civil service law, if such hearing is still desired by the plaintiff.

For the reasons set out in Divisions I and II the cause is reversed.—Reversed.

GARFIELD, C. J., and BLISS, HAYS, LARSON, OLIVER, PETERSON, and SNELL, JJ., concur.

THORNTON, J., dissents.

THORNTON, J.—I respectfully dissent.

I. In view of the prior treatment given section 70.6, Code of Iowa, 1958, and chapter 70, Code of Iowa, 1958, by this court I feel if a change is to be made it is a legislative function.

Chapter 70, Soldiers Preference Law, confers special rights or privileges of employment on wartime veterans in governmental employment, section 70.1, and provides security of tenure except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with a right of review by certiorari. Section 70.6.

Thus a predetermined class is created with special privileges not enjoyed by others in the same work. Though this

legislation is special in nature it meets the test of being general because it relates to the class. In Crawford, v. Iowa State Highway Commission, 247 Iowa 736, 739, 76 N.W.2d 187, 189, we apparently approved the distinction in 82 C. J. S., Statutes, section 163, page 277, as follows:

" 'A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special.' "

This chapter permits or provides two ways of discharging employees in the governmental departments and political subdivisions to which it is applicable. One by hearing for wartime veterans and any method chosen by the employer or head of the particular department for others.

Chapter 365, Code of Iowa, 1958, confers special rights or privileges upon all persons who qualify, sections 365.7, .8, .9, .10, .16, .17, for employment in cities as provided in section 365.6. In the positions to which it applies the employee is required to be qualified as provided. Sections 365.6, .7, .8, .9, .11. The tenure of the persons so employed is made secure by seniority rights, sections 365.12 and 365.28, and they may only be removed, demoted, suspended or discharged as provided in sections 365.18 and .19. The purpose of the legislation is to obtain competent qualified people in the appointive positions designated in cities and to insure their tenure. A class of persons holding civil service rights is thus created. Sections 365.18 and .19 meet the test of being a general law, they relate to all members of the class created. But it gives special privileges to that class.

If there is an irreconcilable conflict between the removal statutes, section 70.6, Soldiers Preference, and sections 365.18 and .19, Civil Service, it is because of the natural overlapping of the two classes. A number of wartime veterans do qualify and are appointed under civil service, as the plaintiff here. Such veterans are preferred in appointment by section 365.10. The question is, do they lose the privilege granted under section 70.6 and come solely under section 365.18 et seq.? If the answer is negative, we have again two systems of removal and discharge. Section 365.19, the later enacted statute, provides the person

having the appointing power and the police and fire chiefs may peremptorily "* * * discharge any subordinate." Reports are provided, the reportee may affirm or revoke. Appeal is provided and the civil service commission is set up as a special tribunal to hear and determine it. Section 365.20 et seq. The term "any subordinate" includes the entire class including plaintiff unless he is protected by section 70.6.

In the past we have indicated there was no conflict between chapter 70 and chapter 365. In Geyer v. Triplett, 237 Iowa 664, 668, 22 N.W.2d 329, 332, after referring to Ervin v. Triplett, 236 Iowa 272, 18 N.W.2d 599, with approval, we said:

"We think the above holdings are correct. We see no conflict between the Civil Service Law and the Soldiers Preference Law. We think the two acts are to be construed together with the purpose of giving each proper application and construction.

"The Civil Service Law, including section 5697, Code of 1939 [now section 365.10, Code of Iowa, 1958], neither modifies nor repeals any of the provisions of the Soldiers Preference Act. Jones v. City of Des Moines, 225 Iowa 1342, 283 N.W. 924."

In the Geyer case sections 365.18 and .19 were not in issue. In the Ervin case, however, a demotion was involved and though sections 365.18 and .19 were not separately referred to, it was held section 1163, Code of Iowa, 1939 (now section 70.6, Code of Iowa, 1958), should be given effect.

It might be noted in passing where in the Ervin case general and special statutes are referred to, section 5697, Code of Iowa, 1939 (now section 365.10, Code of Iowa, 1958), dealing with soldiers preference in civil service, is referred to as special and chapter 60, Code of Iowa, 1939 (now chapter 70, Code of Iowa, 1958), is referred to as general.

In the Jones case this court stated it was a case of ouster and held what is now section 70.6 was applicable and not modified or repealed, citing Hahn v. Clayton County, 218 Iowa 543, 255 N.W. 695.

In the Hahn case, wherein under the then provisions of section 4644-c19, Code of Iowa, 1931 (now section 309.17, Code of 1958), the board of supervisors was given the power to employ a county engineer, the concluding sentence of the section

was, "The board shall fix their term of employment which shall not exceed three years, but the tenure of office may be terminated at any time by the board.", this court held what is now section 70.6, Code of Iowa, 1958, controlling and that the board could not discharge the engineer except pursuant to that section. Section 4644-c19, Code of Iowa, 1931, was a later enacted statute and no reason appears why it does not give power to discharge at least equal to that contained in sections 365.18 and .19, Code of Iowa, 1958.

The majority now changes position, and after the legislature has acquiesced in our former interpretation for 27 years says the legislature meant the opposite. It is preferable for changes of this type to be made by the legislature.

II. In Division II the majority holds a civil service appointee is not entitled to the protection or benefit of section 70.6, Code of Iowa, 1958, because he comes within the exceptions of section 70.8, Code of Iowa, 1958. If the first division of the majority opinion is sound the second division is entirely unnecessary to the decision.

Section 70.8 provides:

"Nothing in this chapter shall be construed to apply to the position of private secretary or deputy of any official or department, or to any person holding a strictly confidential relation to the appointing officer."

The first two excepted positions are ones where there is a close relationship between the superior and subordinate in the matter of performance of duties. When the third is found in series with these a similar relationship undoubtedly was intended.

In the cases cited by the appellant and reaffirmed by the majority the appointing officer exercised unlimited freedom of choice in selecting the subordinate. In this case the appointing officer was limited to the names on the certified list. Here actually only one, but the list could contain up to ten. Certainly at that point there could be no confidence or trust placed in the subordinate by the superior. That the duties of an assistant chief of police as outlined in the ordinances are those of trust and confidence and require skill and judgment no one would

deny. But the trust and confidence are owed to the public, not the appointing officer. In Allen v. Wegman, 218 Iowa 801, 810, 254 N.W. 74, 79, and Brown v. State Printing Board, 230 Iowa 22, 24, 296 N.W. 719, 720 (I agree with the result reached in each), a definition of "confidential relation" was taken from Scott v. Brown, 90 Ind. App. 367, 378, 157 N.E. 64, 68, as follows:

"The term 'confidential relation' is a very broad one and is not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence."

The next sentence at page 378 of 90 Ind. App., page 68 of 157 N.E. is, "It arises when a continuous trust is reposed by one person in the skill or integrity of another." See also 15 C. J. S., Confidential, page 822.

In this case by the majority and in the reaffirmed cases the word "strictly" has been overlooked and so have the words "to the appointing officer."

In 12 C. J., Confidential Relation, page 421, note 67(b), the following is quoted:

" 'A "strictly confidential relation" means much more than the imposition of important duties, requiring the exercise of intelligence or trained ability or integrity. It necessarily implies personal contact between the officer and his superior, where the officer occupying the position holds towards his superior a position of confidence and trust; where the person occupying the position has the power, or in consequence of the relation that exists between himself and his superior, to impose upon the superior liabilities and obligations which the superior is bound by law to discharge. It must be shown that the officer holding the position has the power of so performing his duties, in consequence of his relations to his superior and the business that the superior is bound to prosecute, or by a betrayal of the information acquired in consequence of the personal relations necessary because of the office which he holds, as to impose liability or obligations upon the superior which the superior will be compelled to meet.' Peo. [ex rel. Flood] v. Gardiner, 33 App. Div. 204, 207, 53 NYS 451."

If that definition is applied here it is in harmony with the first two exceptions and gives meaning to all the words used in the third exception.

In Ervin v. Triplett, 236 Iowa 272, 18 N.W.2d 599, this court held the record did not disclose any work that was confidential to the commissioner within the provisions of section 70.8. From this the majority opinion states the case is authority for the proposition that a detective does not occupy a position of trust and confidence. However, a detective is higher classification than a patrolman and we find from the trial court's opinion under section 39.5 of the Municipal Code the city manager can in the event of the absence or disability of the police chief designate any member of the department as chief.

Reliance is placed on the duties delegated by the city Code. These duties are a public trust and confidence, not to the appointing officer. An examination of the duties outlined in the majority opinion shows the area of operation of an assistant chief placed on him by the Municipal Code, not by the city manager, and it also discloses the assistant chief does not perform any duties of or for the manager. Certainly the manager is charged with running the city, but not with the duties of an assistant chief. Some importance is attached to the fact the assistant chief may act as chief in his absence or upon his disability. What the ordinance provides is, "A designated officer of this class may direct all activities of the department in the absence or disability of the police chief." This is far from automatic, it is at the will of the manager. And as above noted any member of the department may be so designated, even a detective. Apparently the cutoff for position of trust and confidence for the purposes of section 70.8 is somewhere between detective and assistant chief of police. The effect of the majority holding is to except from Soldiers Preference any public office in which trust and confidence is owed to the public. This is other than a liberal interpretation and repeals chapter 70 for practical purposes.

The other contentions of the appellants are likewise without merit. I would affirm.