# IN THE COURT OF APPEALS OF IOWA

No. 15-1861
Filed December 21, 2016

**JAMES MACHAMER,**
        Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES, JANET PHIPPS, and KARIN GREGOR,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame Ebinger, Judge.

A former employee appeals the district court's denial of his petition for writ of certiorari, claiming he was denied his rights under the Veterans Preference Act. **AFFIRMED.**

Thomas J. Duff of Duff Law Firm, P.L.C., West Des Moines, and Elizabeth Flansburg of Lawyer, Dougherty, Palmer & Flansberg P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Meghan Gavin, Jeffrey C. Peterzalek, and Matthew Oetker, Assistant Attorneys General, for appellees.

Heard by Mullins, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SCOTT, Senior Judge**

James Machamer appeals the district court's denial of his petition for writ of certiorari. Machamer claims the Iowa Department of Administrative Services (DAS) violated the Iowa Veterans Preference Act (the Act) by denying him a hearing before he was terminated from his position. *See* Iowa Code ch. 35C (2015). In this appeal, he asserts the district court wrongly concluded he was exempt from the protections of the Act as a "person holding a strictly confidential relation to the appointing officer." *See id* § 35C.8.

**I. Background Facts and Proceedings.**

In March 2015, Machamer accepted the position of Chief of the Organizational Performance Bureau for the Human Resource Enterprise of the DAS.[1] A month later, Machamer was asked to resign his position, effective immediately, after allegations were made that Machamer made inappropriate statements during a staff meeting. After resigning his position, Machamer filed a petition for writ of certiorari with the district court asserting the DAS; its director, Janet Phipps; and its chief operating officer and general counsel, Karin Gregor, violated the Act by failing to provide him due notice of the charges supporting termination and a hearing. *See id.* § 35C.6 (noting no person protected by the Act "shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges"). The defendants filed an answer in which they asserted the Act

---

[1] The DAS is divided into multiple enterprises, including: General Services Enterprise, Human Resource Enterprise, Information Technology Enterprise, State Accounting Enterprise, and Center Procurement and Fleet Services Enterprise. Iowa Admin. Code r. 11-1.4.

was not applicable to Machamer because he was a "person holding a strictly confidential relation to the appointing officer" and he was a deputy of the chief operating officer.

After the parties submitted briefs and made arguments at the hearing, the district court issued its decision denying the petition for writ of certiorari. The court determined Machamer was a person holding a "strictly confidential relation" to Phipps, as the appointing authority, because "Machamer's duties and supervisory tasks demonstrate that his position required 'skill, judgment, trust, and confidence' and [he] was 'not merely clerical.'" The court also, alternatively, concluded Machamer was a deputy under section 35C.8, which also made him exempt from the protections of the Act.

Machamer appeals asserting he is neither a deputy nor in a strictly confidential relationship with Phipps.

## II. Scope and Standard of Review.

Our review of the district court's denial of a petition for writ of certiorari is for correction of errors at law. *Frank Hardie Advert., Inc. v. City of Dubuque Zoning Bd. of Adjustment*, 501 N.W.2d 521, 523 (Iowa 1993). "[R]eview by an appellate court is limited to determining whether the district court properly applied the law to the controversy before it." *Id.*

## III. Strictly Confidential Relation.

Iowa Code chapter 35C provides preference in hiring and protection from termination for those individuals who have served our country in the armed forces. *See* Iowa Code § 35.1 (defining the term "veteran" as used in chapter 35C); *see also id.* §§ 35C.1, .6 (providing veterans "are entitled to preference in

appointment and employment over other applicants of no greater qualifications" and no veteran "shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges"). In this case there is no dispute regarding Machamer's veteran status. The only issue is whether the exceptions in section 35C.8 apply to remove the protections of the Act from Machamer.

Iowa Code section 35C.8 provides, "Nothing in this chapter shall be construed to apply to the position of private secretary or deputy of any official or department, or to any person holding a strictly confidential relation to the appointing officer." "A confidential relationship is a legal status. It is a conclusion of law, rather than a finding of fact. A matter for judicial construction and determination." *Klatt v. Akers*, 5 N.W.2d 605, 611 (Iowa 1942). Our supreme court has said the term "confidential relation" is very broad "and is not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence." *Andreano v. Gunter*, 110 N.W.2d 649, 655 (Iowa 1961) (citation omitted). "Where duties are not merely clerical and require skill, judgment, trust, and confidence, the courts are inclined to regard the appointee to whom such duties are delegated as holding a strictly confidential relation to the appointing officer or board." *Id.*

We must look at the duties of the appointing officer to determine whether the officer was compelled to entrust the performance of the duties to others because it would be impossible to discharge those assigned duties personally. *Brown v. State Printing Bd.*, 296 N.W. 719, 720 (Iowa 1941). We also look to see if the person appointed was "necessarily given considerable latitude and required

to exercise his discretion and good judgment in dealing with many of the duties delegated to him." *Hannam v. Iowa State Commerce Comm'n*, 292 N.W. 820, 820 (Iowa 1940). If the appointing officer is required to perform a duty involving skill or integrity and could incur liability to himself or to the entity that employs him if the duty is not properly executed and the officer entrusts "the discharge of this duty to another, their relations become confidential." *Allen v. Wegman*, 254 N.W. 74, 79 (Iowa 1934) (citation omitted).

In this case, there is no dispute the appointing officer is Janet Phipps, the director of the DAS. The DAS is in charge of "managing and coordinating the major resources of state government including the human, financial, and physical resources of state government." Iowa Code § 8A.103. Phipps, as the director, is to, among other duties, "[c]oordinate the internal operations of the [DAS] and develop and implement policies and procedures designed to ensure the efficient administration of the [DAS]," "[d]evelop and maintain support systems within the [DAS] to provide appropriate administrative support and sufficient data for the effective and efficient operation of state government," and "[e]xamine and develop best practices for the efficient operation of government and encourage state agencies to adopt and implement these practices." *Id.* § 8A.104(1), (6), (13). In addition, with respect to the human resource management component, the DAS is the central agency responsible for "[e]ducation, training, and workforce development programs" and "[e]mployment relations, including the negotiation and administration of collective bargaining agreements on behalf of the executive branch of the state and its departments and agencies as provided in chapter 20," and it must also "[f]oster and develop, in cooperation with

appointing authorities and others, programs for the improvement of employee effectiveness, including training, safety, health, counseling, and welfare." *Id.* § 8A.402(1)(e), (g), (2)(b).

Machamer, in his position as Chief of the Organizational Performance Bureau, was to lead the bureau team in developing and executing program goals and objectives consistent with the strategy and vision of the Human Resource Enterprise and the DAS. He was also to oversee and participate in personnel investigations to ensure process consistency and integrity. Machamer was to provide consultation for collective bargaining to ensure business needs were accomplished through consistent and accurate interpretation and application of bargaining agreements, law, rules, and policies. He was also to assess needs and develop programs to enhance State employees' effectiveness and performance. In performing these duties, he was responsible for supervising over twenty people and managing a budget of over $2.8 million. He was part of the "management team" of the Human Resource Enterprise of the DAS. Machamer had autonomy in the hiring process for his department, the ability to determine employee evaluation ratings, the authority to settle grievances, and the power to approve vacation and sick leave. While he could recommend disciplinary actions, this was subject to review by his supervisor, and he was not permitted to approve or require overtime.

In support of his claim that he is not in a strictly confidential relationship with Director Phipps, Machamer likens his case to *Ervin v. Triplett*, 18 N.W.2d 599, 601–02 (Iowa 1945) (finding a police detective was not in a strictly confidential relationship with the commissioner of public safety), and *Dennis v.*

*Bennet*, 140 N.W.2d 123, 127 (Iowa 1966) (concluding the chief of the fire department was not in a confidential relationship with superintendent of public safety). We find both cases distinguishable from this case.

In *Ervin*, the supreme court determined the police detective was not in a confidential relationship to the appointing authority—the commissioner of public safety—because, while the detective's work may have been confidential to his immediate supervisor, the detective did not do any confidential work for the commissioner. 18 N.W.2d at 601–02. In this case, Machamer was part of the management team of the Human Resource Enterprise of the DAS. He was charged with representing the DAS in his interactions with those both inside and outside state government. Machamer's chain of command included first, Gregor, as chief operations officer of the Human Resource Enterprise, and then Phipps, as director of the DAS and the appointing authority. Unlike the police detective in *Ervin*, Machamer's chain of command encompassed the appointing authority. We conclude Machamer's case is not analogous to *Ervin*.

In *Dennis*, the supreme court concluded that the appointing authority, a councilman serving as superintendent of public safety, was "not charged with performance of any of the duties of chief of the fire department." 140 N.W.2d at 128. Because of this, the appointing authority did not delegate any of his duties to the chief of the fire department—"No officer can delegate to a subordinate any powers or duties which the officer himself does not possess." *Id.* Instead, the position of the chief of the fire department was delegated or vested with duties directly by separate statute or ordinance. *Id.* Because there was no delegation of duties between the superintendent of public safety—the appointing authority—

and the chief of the fire department, the court concluded there was not a strictly confidential relationship between the two positions. *See id.* Such is not the case here. Director Phipps was assigned various duties by the Iowa Code as outlined above, and some of those duties were delegated to Machamer in his position as the Chief of the Organizational Performance Bureau.

Machamer claims interpreting the exception of the Act so broadly so as to apply to his position with the DAS would swallow the rule, wiping out the protections of the Act for all but the most mundane positions. Our supreme court has consistently interpreted the "strictly confidential relation" exception broadly since it was first considered in *Allen*, 254 N.W. at 79, and we are not at liberty to overturn controlling supreme court precedent. *Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011).

Machamer also points out that the "Merit Exemption Questionnaire" that was part of his employment file indicated he was in a "confidential relationship" with Gregor but did not indicate such a relationship existed with Director Phipps. As the district court correctly noted, the definition of "confidential relationship" in the "Merit Exemption Questionnaire"—"A confidential relationship is one in which one person has a duty to the other not to disclose information"—is much narrower than the definition the supreme court has given to a "strictly confidential relation" with respect to the exception to the Act in section 35C.8. Therefore, the questionnaire is not controlling on the issue at hand.

Upon our review of the undisputed facts in the record, we conclude the district court did not commit an error at law in determining Machamer was in a strictly confidential relationship with Director Phipps under section 35C.8. The

director of the DAS is delegated numerous duties and obligations that one person cannot perform alone, compelling the director to entrust the performance of the duties to others. *See Brown*, 296 N.W. at 720. Machamer was given authority and latitude, and was "required to exercise his discretion and good judgment in dealing with many of the duties delegated to him." *See Hannam*, 292 N.W. at 820. These duties were "not merely clerical" but required "skill, judgment, trust, and confidence." *See Andreano*, 110 N.W.2d at 655. Because we determine Machamer's employment fell within the "strictly confidential relation" exception to the Act, we need not separately determine if his position qualified for the deputy exception as well.

We affirm the district court's denial of Machamer's petition for writ of certiorari.

**AFFIRMED.**