## SCOTT v. BROWN.

[No. 12,719. Filed June 10, 1927. Rehearing denied October 25, 1927. Transfer denied December 4, 1929.]

*M. E. Leliter*, *A. J. Hickey*, *N. F. Wolfe*, *Louis B. Ewbank* and *J. B. Dilworth*, for appellant.

*Lemuel Darrow*, *Earl Rowley* and *C. V. Shields*, for appellee.

NICHOLS, J.—Action by appellee against appellant for damages resulting from fraud and deceit of appellant through which the appellee was induced to enter into a certain contract. The complaint, briefly stated, avers that appellant and appellee for a number of years were engaged in the business of manufacturing baby carriages and go-carts, and, at the inception of said business, appellee and appellant entered into a written contract by which each was to be an equal owner in the business, and appellee was to have charge of the manufacture of said baby carriages and go-carts and to invent and design improvements on the same, and appellant was to look after the business, keep the books and arrange the financial affairs of the company. The company was incorporated, as provided for in the agreement, with a capital stock of $15,000 common and $35,000 preferred. Appellee had been engaged in the manufacture of baby carriages and go-carts in the city of Chicago with a partner by the name of Walters, each owning a one-half interest, and appellee had machinery, tools and some equipment for the manufacture of said baby carriages and go-carts. Said business was moved to LaPorte, Indiana, and appellee was to receive $7,500 for his share and interest in the machinery and tools, and appellant was to and did purchase of appellee's partner, Walters,

the interest which he held in the tools and machinery at $7,500, for which he was to receive preferred stock, and appellant was to finance the company and take preferred stock, and loan to the company money with which to carry on its business. In the operation of said business for four years, appellant did keep the books and finance the business, and appellee did manufacture and invent and design new models to keep pace with the trade in the manufacture of baby carriages and go-carts.

After having operated said business for four years under the contract which they made, the company had accumulated in assets $359,606.12, and its liabilities were but $91,268, and its business had grown to such proportions that it had outgrown the original capitalization, and that appellant in the management of the affairs of the company concluded to increase the capital stock of the company from $15,000 to $100,000 common, and from $35,000 to $200,000 preferred.

A confidential relation had existed between appellant and appellee during all of said years in the operation of said business, and appellee had implicit confidence in his associate, appellant, in his integrity, honesty and fair dealing, and was unfamiliar with the financial affairs of the company or its earnings.

Upon the reorganization of the company by which the stock was increased, appellant deliberately undertook to and did, by false representations made to appellee as to the financial condition of the company's assets and other representations, induce appellee to take $7,500 of the common stock of the $100,000 capitalization as his just proportion of his interest in said organization, and caused $94,000 of the $100,000 capitalization of common stock to be set off for appellant's interest, and induced appellee to take common stock for his preferred stock with accumulated dividends, and that appellee, relying upon the false statements made by appellant as to the

financial condition of the company and other representations, entered into a contract with appellant by which appellee's interest in the contract that they had been working under was abrogated. Appellee signed said contract, believing the false statements of appellant to be true and relying upon his integrity and honesty as his associate in business, and did not know the actual financial condition of the company at the time of the signing of said contract, and did not learn of the same until a short time before the beginning of this action.

Appellee alleged that said contract was obtained through fraud and deceit, and to deprive appellee of his interest and share of the profits that had been earned by the company prior to the reorganization, for which he asked damages in the sum of $54,500 against appellant. There is some inaccuracy and confusion in computations which we are unable to harmonize, but they are not such as to affect the result or to justify a reversal.

It is further averred that, after appellant procured the signing of the contract on September 26, 1919, whereby appellee's just interests in the company were abrogated, appellant so managed the business and put inexperienced men in the management thereof that what stock appellee had, which was held by appellant, became worthless.

Appellant demurred to the complaint, which demurrer was overruled by the court, and appellant then filed a general denial to the complaint. The cause was submitted to a jury for trial, which returned a verdict of $25,000. The court rendered judgment on the verdict and overruled the motion of appellant for new trial. On appeal, appellant assigns as error the court's action in overruling his demurrer to the complaint and in overruling his motion for a new trial.

Appellant contends that the action is for damages resulting from fraud and deceit, and the complaint is to

be tested on that theory. Appellee concurs in that contention, and, upon that theory, the case was tried in the lower court. On that theory it will be tested here. If there are allegations therein sufficient to state a cause of action for fraud and deceit, the fact, if such it be, that there are allegations bearing on some other theory will not make the complaint bad as against demurrer. *Denman* v. *McMahin, Admr.* (1871), 37 Ind. 241; *Chicago, etc., R. Co.* v. *Lawrence, Admx.* (1906), 169 Ind. 319, 79 N. E. 363, 82 N. E. 768. Such allegations might have been struck out on motion, or, if the averments are indefinite or uncertain, appellant might have clarified the complaint by a motion to make more specific.

Appellant states as a proposition of law that an action for losses, even though occasioned by fraudulent acts of a corporate officer, can be maintained by a stockholder only on a showing that the corporation fails or refuses to act. But such a rule of law can have no application to the facts as here alleged. This is not an action by a stockholder against an officer of a corporation for the mismanagement of the affairs of the corporation; but it is an action by appellee against appellant as an individual, and not as a corporate officer, for fraud and deceit by which he was induced to enter into a contract to his damage.

The complaint sets out the contract of 1915 and amendment thereto under which the parties were operating, and which contemplated equal ownership of the stock by the parties, alleging compliance therewith by the parties. It is then alleged that, on August 31, 1919, the company of which appellant and appellee were sole owners had accumulated assets amounting to $359,606.12, and that the only liability against the company was $91,268.63, which included $24,000 reserved for federal taxes; that appellee was not

advised of the earnings of said company, and had left the matter of financing and distribution of dividends and determining the assets and liabilities to appellant, in whom appellee had implicit confidence for integrity and honesty as to all matters pertaining to the financial condition of the company; that appellee, without knowing the actual condition of the company and earnings thereof, was importuned by appellant to execute the contract, which, as afterwards modified, was prepared by appellant, and which is set out in the body of the complaint. This contract contains a statement that appellant had advanced to the company additional sums of money to a total maximum amount of $254,000, and, in addition thereto, had guaranteed the credit of company to divers firms. The complaint further alleges that appellant, by representations made to appellee as to the amounts due and owing to appellant by the company, induced him to sign the contract as modified, and he relied upon the statements made by appellant as wholly reliable and true; that appellee performed all of the agreements and conditions of the contract of January 28, 1915, as modified, and believed that appellant had the sums of money as above set forth due and owing him, or for which he had become personally liable, on September 26, 1919 and on April 17, 1920; that appellant represented to appellee that the company had not accumulated any profits or surplus up to August 31, 1919, and demanded that appellee, in order to assist him in selling preferred stock of the new organization with increased capital stock, would take for his preferred stock of $7,500, common stock, and enough additional common stock to pay up dividends which had accumulated on his preferred stock from March 15, 1915, to August 31, 1919, giving to appellee $17,600 in common stock of the new organization, which appellant induced appellee to assign to him to be held in escrow and as security for the

purchase of $29,400 of common stock of the new organization. It is also alleged that, at the time of reorganization of the company, it had assets that it had earned, after deducting depreciation of permanent assets and reserves for bad accounts amounting to $358,874.18, and that there had been earned by it, to set off against the common stock as originally incorporated, an additional sum of $80,124.14, after paying all dividends of preferred stock outstanding; also that, at the time of the execution of said contract on September 26, 1919, there was no money due and owing appellant on any notes issued by the company or on which he was in any wise liable.

Further, it is alleged that the statements made by appellant that said company owed $254,000 and, in addition thereto, guaranties made by him to divers firms were false; that said company at said time owed less than $40,000, which was principally commercial paper, issued for merchandise, and less than $5,000 in current accounts; that appellee, believing the statements of appellant to be true, and having the interest of the company at heart, in an effort to protect it and protect the investments which he had theretofore made and work and labor which he had theretofore performed in the four years last past, executed said contract, not knowing the true financial condition of the company and not knowing the fact that appellant had liquidated the notes which he had theretofore held against the defendant company for money advanced, and had accepted preferred stock therefor; that appellant well knew that the company did not owe him notes in the sum of $254,000 or any other sum.

It is also alleged that the statements so made by appellant to appellee were so made to defraud him out of his property and interest in the company, and it is further alleged that appellant, believing said false repre-

sentations to be true, and relying thereon, did execute the contract under which his rights in the company under the original contract were declared forfeited and void. It is further alleged that, under the fraudulent contract, he was deprived of his right to have issued to him one-half of the common stock of the company, which had a market value at par, and that the company fell into the hands of incompetent management, and that, under such management, it became insolvent, and the stock which he held in the company at the time of the commencement of this action became worthless. That, by reason of the false and fraudulent representations so made, appellee was damaged in the sum of $54,500.

The complaint clearly states a cause of action in favor of appellee for damages because of fraud and deceit. But appellant argues that, even though appellee executed the contract of September 26, 1919 under misapprehension as to the true financial condition of the company, the complaint affirmatively shows that he gave up nothing and lost nothing by so doing, and that the complaint therefore fails to allege any damages resulting, either directly or indirectly, from the signing of the contract. It is averred therein that appellant and appellee were equal owners of the common stock of the original company before the reorganization; that the earnings of the company since its organization were more than $80,000; that appellee was entitled to $80,000 over and above indebtedness, and appellee was entitled to one-half of the common stock. Quoting from the complaint, it alleges: "That the plaintiff was entitled, as per the earnings and surplus of earnings of said defendant company, over and above all indebtedness, to one-half of the common stock of the company—$94,000 to be issued to him for the work, labor and assets which he had done and performed under his original agreement with the said Scott in the opera-

tion of said defendant company and in accordance with the agreements of said Scott to have a one-half interest." The complaint further alleges that the statements made by appellant to appellee were so made to induce appellee, by said false representations, to sign said contract, with the purpose and intention of defrauding him out of his property and interest in the company; that appellee should have had issued to him at said time one-half of the common stock of said company that was issued to appellant, $47,000, together with $7,500 of preferred stock. It thus appears by the averments of the complaint that appellee was required to purchase stock of the par value of $29,400, to which he was already entitled without further compensation therefor. This stock, together with the $17,600 of stock which had been issued to appellee and was held by appellant in escrow, by appellant's subsequent mismanagement became worthless, but appellee's loss must be measured by the value of the stock at the time he was defrauded and was discharged from the management of the company; that, at the time of the execution of the contract, the common stock of said company had a market value of par in the city of La Porte, Indiana, and could have been sold at par, and that, by reason of the false representations made by appellant, appellee was damaged in the sum of $54,500. The allegations as to the amount of damages suffered are sufficient upon which to base a recovery of $25,000. The court did not err in overruling appellant's demurrer to the complaint.

Appellant attempted to bring the instructions into the record under the provisions of the act of 1903, as amended in 1907, §586 Burns 1926. But appellee says in his brief that neither appellant nor his attorneys signed the instructions tendered on behalf of appellant, and, as appellant does not challenge this statement by a reply brief, we assume that it is true. In

order that requested instructions become a part of the record without a bill of exceptions, they must be signed by appellant or his attorney. *City of Logansport* v. *Green, Admx.* (1922), 192 Ind. 253, 135 N. E. 657; *City of Indianapolis* v. *Barthel, Admr.* (1923), 194 Ind. 273, 141 N. E. 339, 142 N. E. 409. No question, therefore, is presented for our consideration as to error of the court in refusing to give instructions tendered by appellant.

Appellant contends that the court erred in giving to the jury on its own motion instruction No. 11, which left it to the jury as to what, if any, relation of confidence existed between the parties, and as to whether or not such relation was abused by appellant, contending that the only confidential relation between the parties was created and defined by the written contract of January 28, 1915, and that it was therefore a question for the court to determine from the contract as a matter of law. But we do not so understand the law under the circumstances of this case. It is true that it is for the court to interpret and construe written contracts, but the relations between these parties is not alone revealed by the terms of the contract. It appears by the contract that the parties were to become equal owners of the stock of the corporation thereafter to be organized, and thereunder appellant took charge of the financial affairs of the company, and that appellee was ignorant thereof, devoting himself exclusively to the mechanical side of the business, relying wholly upon appellant, in whose integrity he had full confidence. Owning as they did all of the stock of the corporation, the relation between them was more like that of partners than of members of a corporation. Under such circumstances, had the court determined, as a matter of law, that a confidential relation existed between the parties, this court would not have disturbed the court's

holding, and certainly appellant may not complain that the court submitted the question to the jury. The term "confidential relation" is a very broad one and is not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence. It arises when a continuous trust is reposed by one person in the skill or integrity of another. 12 C. J. 421. The jury was very properly permitted to say whether, under all of the evidence, such relation existed.

Appellant next complains that the court erred in giving to the jury, on its own motion, instruction No. 20, to the effect that, if it found from the evidence that appellee, by virtue of the original contract with appellant, was to share equally in the common stock of the company that was organized in 1915, and continued under said contract of 1915 to carry out said contract faithfully in the manufacture and sale of baby vehicles, and that the company had accumulated a surplus over and above its indebtedness and other liabilities, including the preferred stock, of more than 100 per cent of the common stock, then the parties would each be the owner through his common stock of one-half of the net assets or surplus of the company, and in giving to the jury, on its own motion, instruction No. 23 to the effect that the jury had a right to consider the value of appellee's interest in the company at the time of fraud, if any, and what, if any, was the value of his interest after the fraud, if any, was perpetrated, and fix his damages, if any, at such an amount as, under the evidence and within the allegations, theory and limits of the complaint, would reasonably compensate him. We see no objections to these instructions. Instruction No. 20 correctly interprets the 1915 contract, and No. 23 gives to the jury a proper measure of appellee's damages.

Instruction No. 21, given by the court on its own mo-

tion, is in harmony with the averments of the complaint involving the question of confidential relations and misrepresentations as to the indebtedness of the company to appellant, and the court did not err in giving it. It is long in its recitals, and we do not need to set it out. The instructions as a whole fully and correctly informed the jury as to the law of the case, on the theory of the case as presented by the complaint. There is ample evidence to sustain the verdict of the jury.

The judgment is therefore affirmed.