Davɪᴅ K. Brown, Appellant, v. State Printing Board et al., Appellees.

No. 45588.

March 11, 1941.

H. W. Hanson, for appellant.

Carl J. Stephens and Ben C. Buckingham, for appellees.

Garfield, J.—Plaintiff's petition alleges that he was ap-

pointed by defendants to the office of state superintendent of printing on January 7, 1939, and removed from that position as of January 15, 1941; that plaintiff is an honorably discharged soldier of the war with Germany and therefore entitled to the benefits of the Soldiers Preference Law (chapter 60, Code, 1939); that his removal was wrongful because the provisions of the law with regard to hearing upon stated charges were not complied with. A writ of certiorari was issued, which defendant printing board moved to quash on the ground that the position held by plaintiff came within the exceptions to the Soldiers Preference Law provided for by Code section 1165. The trial court sustained the motion and plaintiff has appealed.

█ This appeal presents the one question whether the position of state superintendent of printing held by appellant falls within any of the exceptions to the Soldiers Preference Law stated in Code section 1165, reading as follows:

"Exceptions. Nothing in this chapter shall be construed to apply to the position of private secretary or deputy of any official or department, or to any person holding a strictly confidential relation to the appointing officer."

If appellant's position was that of private secretary or deputy of the printing board or if appellant held a strictly confidential relation to the board, under the plain mandate of the statute, he is not entitled to the benefits of the Soldiers Preference Law and the ruling of the trial court must be affirmed. We are agreed that the trial court was right in holding that appellant's position falls within the confidential relation exception stated in section 1165.

We will not undertake any comprehensive definition, applicable in all cases, of the terms "private secretary," "deputy," or "person holding a strictly confidential relation to the appointing officer." A similar question to that now before us was before the court in Allen v. Wegman, 218 Iowa 801, 254 N. W. 74; Hannam v. Commerce Commission, 228 Iowa 586, 292 N. W. 820; and Bowman v. Overturff, 229 Iowa 329, 294 N. W. 568. All three of these cases, especially Allen v. Wegman, discuss the meaning of the confidential relation exception to the preference law. The Allen case quotes with approval from Scott v. Brown, 90 Ind.

App. 367, 157 N. E. 64, (page 810 of 218 Iowa, page 79 of 254 N. W.) as follows:

" 'The term "confidential relation" is a very broad one and is not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence.' " This statement is frequently found in texts (see 15 C. J. S., page 822) and in decisions in cases of this kind.

Also in the Allen case, referring to People v. Palmer, 152 N. Y. 217, 46 N. E. 328, a leading case on this subject, (page 810 of 218 Iowa, page 79 of 254 N. W.) we say:

"The court in that case further said that, where the duties of the appointing officer were of such a character that it is impossible for him to personally discharge them, and of necessity he was compelled to intrust the performance of them largely to others, a confidential relation arose between the officer and the others to whom a portion of his duties was necessarily delegated."

Where duties are not merely clerical and require skill, judgment, trust and confidence, the courts are inclined to regard the appointee to whom such duties are delegated as holding a strictly confidential relation to the appointing officer or board.

The state printing board was created by the legislature. (Chapter 14 of the Code.) Its duties are defined by statute, many of them being stated in section 183. The board consists of the secretary of state, auditor of state, attorney general, and two appointive members each of whom must have had at least five years experience in the printing trade. (Sections 178 and 179.) The law does not contemplate that the members devote their full time to the business of the board. The three state officials have other important functions to perform. The two appointive members are paid only for the time actually engaged in the performance of their duties. (Code section 182.) Of necessity, what the board members themselves can personally do is limited. The statute expressly provides that the board shall prescribe rules for the conduct of its business.

The printing board is authorized to appoint the superintendent who "shall serve during the pleasure of the board." (Code

section 213.) Section 215 outlines at least many of the duties of the superintendent. He is required to devote his full time to the duties of the position. With regard to the enforcement of contracts for state printing the statute provides that the superintendent acts under the direction of the board. Likewise, in the preparation of specifications and advertisements for printing the superintendent acts under the directions of the board. He is the "ex officio secretary and general executive officer" of the board. Finally, the superintendent is required to "perform such other duties as are necessary, or incident to his position, *or which may be ordered by the printing board*, or required by law." (Code section 215.) (Italics supplied.)

The principal point urged upon us by appellant is that the duties of both the board and the superintendent have been prescribed by the legislature; that the delegation of power to the superintendent is not from the board, but from the legislature; and that therefore there is no strictly confidential relation between the board and the superintendent. As we have above observed, the statutes do make provision for the duties of the board and at least for many of the duties of the superintendent. It does not necessarily follow, however, that the relation between the board and the superintendent is not strictly confidential. The statute expressly provides that the superintendent act under the direction of the board in at least the two important matters of enforcing contracts for state printing and in the preparation of specifications and advertisements therefor. Furthermore, there is imposed upon the superintendent by the legislative mandate such other duties as may be ordered by the board. Under this provision, the board was authorized to, and no doubt did, impose numerous duties upon the superintendent. We think it is plain therefore that while the statutes undertake to provide for the duties of both the board and the superintendent, the legislature contemplated that the board direct the superintendent in the performance of at least many of his duties and that the superintendent is required to act pursuant to such directions. The statutes contemplate a delegation of authority from the board to the superintendent, and the duties imposed upon the superintendent involve skill, judgment, trust and confidence. They are not merely clerical in nature. The statutes fairly imply a relation

of strict confidence on the part of the superintendent toward the board that appoints him and at whose pleasure he serves.

Appellees contend that appellant is both a private secretary and a deputy of the board. As above observed, section 215 provides that the superintendent shall be ''ex officio secretary and general executive officer'' of the board. Also, the superintendent is required to ''keep a detailed record of all meetings and proceedings of the printing board and of the award of contracts by said board.'' (Paragraph 4, section 215.) We think it must be said that appellant's duties partake somewhat of those of a private secretary and also of those of a deputy. We believe, however, that appellant was more than a private secretary and probably more than a deputy. In any event, we do not base our conclusion that appellant is not entitled to the benefit of the Soldiers Preference Act on the ground that he was a mere private secretary or deputy.

In Allen v. Wegman, 218 Iowa 801, 254 N. W. 74, it was held that the head bookkeeper in the state treasurer's office held a confidential relation to the treasurer. In Hannam v. Commerce Commission, 228 Iowa 586, 292 N. W. 820, it was held that an inspector for the motor transportation division of the state commerce commission was within the confidential relation exception. In Bowman v. Overturff, 229 Iowa 329, 294 N. W. 568, it was held that a jailer or turnkey in the Polk county jail held a confidential relation to the sheriff. We think the state superintendent of printing, in view of the statutory provisions relating to the printing board and the superintendent, holds a strictly confidential relation to the board. We believe appellant is as clearly within the confidential relation exception to the preference law as were any of the appointees in the Allen, Hannam, and Bowman cases.

Since the statute which authorized the board to appoint appellant provides that his service is during the pleasure of the board, and the legislature has provided that one holding such confidential position is not entitled to the benefits of the Soldiers Preference Act which appellant seeks to invoke, the case is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.