# IN THE COURT OF APPEALS OF IOWA

No. 21-0981
Filed August 31, 2022


**TOMMY MARION COPELAND,**
    Plaintiff-Appellant,

**vs.**

**STATE OF IOWA and IOWA AIR NATIONAL GUARD,**
    Defendant-Appellees.
_____


Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


A veteran appeals the denial of his petition for writ of certiorari following his termination from the State of Iowa and Iowa Air National Guard. **AFFIRMED.**


Charles Gribble, Christopher Stewart, and Haley Bryan (until withdrawal) of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Alan W. Nagel and Jeffery Peterzalek, Assistant Attorneys General, for appellees.


Heard by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**BADDING, Judge.**

Army veteran Tommy Copeland appeals the denial of his petition for writ of certiorari following his termination as an air base security officer for the Iowa Air National Guard. Copeland claims that, as a veteran, he was entitled to a pre-termination hearing under the Iowa Veterans Preference Act in Iowa Code chapter 35C (2020). The district court rejected this claim, finding that Copeland was exempt from the protections of chapter 35C because he was in a "confidential relation to the appointing officer." *See* Iowa Code § 35C.8. We agree.

## I.     Background Facts and Proceedings

Copeland worked for the State of Iowa and Iowa Air National Guard as an air base security officer. In this role, Copeland was granted "police powers" on the base and was armed at all times. He reported directly to a security forces manager. The security forces manager reported to a deputy adjutant general, who in turn reported to the adjutant general. *Id.* § 29A.16. The adjutant general is the director of the department of public defense in Iowa and charged with performing "all functions, responsibilities, powers, and duties concerning the military forces of the state of Iowa." *Id.* § 29.1.

Despite his status as a veteran, Copeland's employment was terminated without a hearing in August 2020 when he failed a physical agility test for the fourth time. Copeland filed a petition for writ of certiorari. He argued that his termination was illegal because he was not "given a hearing alleging incompetence or misconduct or an opportunity to respond to any allegations" as required by Iowa Code section 35C.6. In resistance to Copeland's petition, the State and Air National Guard did not dispute Copeland's status as a veteran. Instead, they

argued the Veterans Preference Act did not apply to Copeland because he held a "confidential relation to the appointing officer" under the exception in section 35C.8. The district court agreed and denied the petition, finding that Copeland held "a confidential relationship with the Security Forces Manager, the [Deputy] Adjutant General, and the Adjutant General," rendering him exempt from the protection of section 35C.6. Copeland appeals.

## II. Standard of Review

"Our review of the denial of the petition for writ of certiorari is at law." *Frank Hardie Advert. Inc. v. City of Dubuque Zoning Bd. of Adjustment*, 501 N.W.2d 521, 523 (Iowa 1993). Relief is available through certiorari when a lower body exercising judicial functions exceeds its jurisdiction or acts illegally. *Id.* Our review "is limited to determining whether the district court properly applied the law to the controversy before it." *Id.*

The determination of whether a confidential relation exists under section 35C.8 "is not a simple question of fact. A confidential relationship is a legal status. It is a conclusion of law, rather than a finding of fact. A matter for judicial construction and determination." *Klatt v. Akers*, 5 N.W.2d 605, 611 (Iowa 1942). So our review on this issue is also "limited to determining whether the district court properly applied the law to the controversy before it." *Machamer v. Iowa Dep't of Admin. Servs.*, No. 15-1861, 2016 WL 7395731, at *1 (Iowa Ct. App. Dec. 21, 2016) (citation omitted).

## III. Analysis

"Since the Civil War, Iowa has recognized the enormous contributions made to our lives by veterans of our armed forces by giving preference to veterans

seeking employment with the state, as well as employment with the cities, counties, and school corporations within the state." *Stammeyer v. Div. of Narcotics Enf't of the Iowa Dep't of Pub. Safety*, 721 N.W.2d 541, 542 (Iowa 2006). To that end, the Veterans Preference Act "provides veterans with certain hiring preferences and workplace protections." *Williams v. Bullock*, 960 N.W.2d 473, 477 (Iowa 2021); *accord* Iowa Code § 35C.1(1).

Among those protections is section 35C.6:

> No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari or at such person's election, to judicial review in accordance with the terms of the Iowa administrative procedure Act, chapter 17A, if that is otherwise applicable to their case.

This provision ensures "veterans permanency of employment and protect[s] them from removal except for their own incompetency or misconduct." *Kern v. Saydel Cmty. Sch. Dist.*, 637 N.W.2d 157, 161 (Iowa 2001).

But the act's protection against removal is not without exception. Iowa Code section 35C.8 provides that "[n]othing in this chapter shall be construed to apply to the position of private secretary or deputy of any official or department, *or to any person holding a strictly confidential relation to the appointing officer*." (Emphasis added.) This exception has been a part of the statute since its enactment, *see* 1904 Iowa Acts 9, § 2, and an "always troublesome" one at that. *Klatt*, 5 N.W.2d at 606. As a result, we have a good body of case law from our supreme court with instructions on how to interpret and consider confidential relations.

The term "is a very broad one and is not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence." *Allen v. Wegman*, 254 N.W. 74, 79–80 (Iowa 1934) (quoting *Scott v. Brown*, 157 N.E. 64, 68 (Ind. App. 1927)). "Where duties are not merely clerical and require skill, judgment, trust and confidence, the courts are inclined to regard the appointee to whom such duties are delegated as holding a strictly confidential relation to the appointing officer or board." *Brown v. State Printing Bd.*, 296 N.W. 719, 720 (Iowa 1941). We accordingly

> look at the duties of the appointing officer to determine whether the officer was compelled to entrust the performance of the duties to others because it would be impossible to discharge those assigned duties personally. We also look to see if the person appointed was "necessarily given considerable latitude and required to exercise his discretion and good judgment in dealing with many of the duties delegated to him." If the appointing officer is required to perform a duty involving skill or integrity and could incur liability to himself or to the entity that employs him if the duty is not properly executed and the officer entrusts "the discharge of this duty to another, their relations become confidential."

*Machamer*, 2016 WL 7395731, at *2 (internal citations omitted).

Copeland focuses on the delegation part of the analysis, arguing that because he reported directly to the security forces manager, "he did not have a confidential relationship with the Adjutant General or the [Deputy] Adjutant General," who are the relevant appointing officers in this case. *See* Iowa Code § 8A.401(1). In making this argument, Copeland relies on the supreme court's decision in *Ervin v. Triplett*, 18 N.W.2d 599, 601–02 (Iowa 1945), *overruled on other grounds by Andreano v. Gunter*, 110 N.W.2d 649 (Iowa 1961), which considered whether a detective on a police force held a confidential relationship

with the commissioner of public safety.  The *Ervin* court found no such relationship

existed, reasoning:

> The work of a detective may be of a confidential nature and his reports may be confidential to his immediate superior.  However, the record does not in any way disclose that a person holding the position of detective such as was held by the appellee in this case is one of "strictly confidential relation to the appointing officer."

*Id.*  Copeland argues that like the detective in *Ervin*, he "may have a confidential

relationship with his direct supervisor, the Security Forces Manager," but he "does

not have one with the appointing authority, the Adjutant General."

The holding of *Ervin* does give us some pause.  But in cases since then,

our supreme court has continued to apply the broad interpretation of "confidential

relation" set forth in *Allen*—one that does not require "any specific association of

the parties" but applies "generally to all persons who are associated by *any* relation

of trust and confidence."[1]   254 N.W. at 79–80 (emphasis added); *see*, *e.g.*,

*Andreano*, 110 N.W.2d at 654 (listing cases finding a confidential relation between

employees and their appointing officers, including a head bookkeeper in the state

treasurer's office, a senior examiner in the state auditor's office, and a jailer in a

sheriff's office).

Indeed, in *Klatt*, 5 N.W.2d at 611, the supreme court rejected a very similar

argument when a senior examiner in the office of the state auditor argued the

statute required a "*personal* confidential relation between the employee and the

---

[1] We decline Copeland's invitation to reformulate the broad interpretation of "confidential relation" set forth in *Allen* in favor of a definition that "requires a direct relationship between the two parties which creates fiduciary duties and obligations."  We cannot overturn precedent of our supreme court.  *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990).

appointing officer." Even though the state examiner in *Klatt* "never conferred with the Auditor concerning the performance of his duties, never worked in the Auditor's office and never had access to any funds therein," and was "not under the immediate supervision of the State Auditor," the court found a confidential relation existed. *Id.* at 611–12. In doing so, the court emphasized the nature of the examiner's work, the "secrecy, integrity, trust, confidence, skill, [and] competence" required in the performance of the examiner's duties, and the delegation of those duties by the auditor, who ultimately remained "responsible for their proper performance." *Id.* at 612.

Similarly, in *Hannam v. Iowa State Commerce Commission*, 292 N.W. 820, 820 (Iowa 1940), the court found an inspector in the motor transportation division held a confidential relationship with the Iowa State Commerce Commission. The court reached this conclusion even though the inspector's immediate supervisor was a chief inspector, who reported to a deputy superintendent, who in turn reported to a superintendent of the motor vehicle transportation division, a subdivision of the Iowa State Commerce Commission. *Id.* Like in *Klatt*, the court in *Hannam* did not focus on the direct relationship between the employee and the appointing authority but on the duties delegated to the employee. *Id.* at 820–21.

Turning to the delegation question, Copeland works backward, looking first at his duties to determine whether they could have been delegated to him by the appointing officer. He agrees with the district court that his position required him to be

> armed at all times, trusted to have access to restricted areas on a military base, and trusted and required to maintain a valid secret security clearance, military-level weapons qualifications, a favorable

background check, the ability to pass a strenuous Physical Agility Test, and a medical evaluation clearing him as fit to work.

Copeland concedes that all of these duties required him to exercise "discretion and good judgment," along with "skill, judgment, trust, and confidence." *Machamer*, 2016 WL 7395731, at *2. But he contends "[n]one of these are duties of the" adjutant general or assistant adjutant general, so they could not have been delegated to him by those authorities. We disagree, finding from the record a clear line of delegated duties from the adjutant general down the chain of command to Copeland.

The adjutant general is tasked with keeping "charge of the state military reservations, and all other property of the state kept or used for military purposes." Iowa Code § 29A.12(1). To aid the adjutant general in that duty, which would be impossible for one person to perform, *see id.*, section 29A.16(1) provides for the appointment of a "deputy adjutant general for the air national guard upon the recommendation of the adjutant general." And section 29A.16(3) allows the adjutant general to "appoint a full-time staff within prescribed personnel authorization." *See Bowman v. Overturff*, 294 N.W. 568, 570 (Iowa 1940) (considering whether "[b]y reason of his numerous duties," the appointing officer "was compelled to delegate to others"). A position description questionnaire describing the work performed by an air base security officer specifically states the role requires the exercise of "police powers *granted by the State Adjutant General* . . . by carrying firearms, issuing citations, ordering unauthorized persons off the premises, or by detaining them for questioning or for civil authorities." (Emphasis added.) Any errors in the exercise of these police powers could, as the district

court found, "cause bodily harm or security breaches" that could then expose the appointing officers to liability. *See Machamer*, 2016 WL 7395731, at *2.

Copeland agrees with this chain of command, acknowledging that the adjutant general "is in charge of all aspects of the Iowa Air National Guard and delegates those tasks to other individuals, such as a Security Forces Manager, who *then* delegates even further down the chain to individuals, like Copeland, who are Security Guards." But he raises a slippery-slope-type argument, contending that if he has a confidential relation with the adjutant general, it would "mean every employee of the Iowa Air National Guard has a confidential relationship because their supervisors have the relationship."

We disagree, first because delegation of duties is just one part of the analysis. In order to establish a "confidential relation to the appointing officer," the duties themselves must, as stated earlier, not be "merely clerical" and instead require "skill, judgment, trust, and confidence," along with the "exercise of discretion and good judgment." *Id.* As a result, not all positions in the Iowa Air National Guard would fall within the section 35C.8 exception as Copeland contends, even if the duties were delegated by the appointing officer.

Second, to echo another point we made earlier, our supreme court has long applied a broad interpretation of the term "confidential relation" despite dissents raising the same concern as Copeland. *See, e.g.*, *Klatt*, 5 N.W.2d at 613 (Mitchell, J., dissenting) ("If in this position there is a confidential relationship, it would practically wipe out the Soldiers' Preference Act for all positions with the possible exception of some minor jobs, like janitors or street cleaning jobs . . . ."). Because of that broad interpretation, and our obligation to follow controlling supreme court

precedent, we rejected a similar argument in *Machamer*, 2016 WL 7395731, at *3. We do so again here.

## IV. Conclusion

On our review of the record, we agree with the district court that Copeland's position as an air base security officer placed him in a confidential relation with the appointing officer. Copeland was delegated duties that are statutorily assigned to the Adjutant General and "require skill, judgment, trust and confidence" from his superiors. *Brown*, 296 N.W.2d at 720. That confidential relation bars the application of the statutory protection provided in section 35C.6. Iowa Code § 35C.8. Accordingly, we affirm the district court's denial of Copeland's petition for writ of certiorari.

**AFFIRMED.**

Vaitheswaran, P.J., concurs; Tabor, J., dissents.

**TABOR, Judge** (dissenting).

I respectfully dissent. I do not find in the record where Tommy Copeland did "strictly confidential" work for the adjutant general to fall within the exception to the veterans-preference statute at Iowa Code section 35C.8 (2020). Copeland's job as an air base security officer required the trust of his immediate supervisor—like the patrolman in *Ervin v. Triplett*, 18 N.W.2d 599, 601 (Iowa 1945), *overruled on other grounds by Andreano v. Gunter*, 110 N.W.2d 649 (Iowa 1961). But Copeland did not "substitute" for the appointing officer—unlike the jailer deputized by the sheriff in *Bowman v. Overturff*, 294 N.W. 568, 570 (Iowa 1940). Because Copeland is entitled to the protections of chapter 35C, I would reverse and remand for the state department of public defense to provide a hearing.

The majority is correct that courts have struggled with interpreting the phrase "a strictly confidential relation to an appointing officer" in what is now section 35C.8. *See Klatt v. Akers*, 5 N.W.2d 605, 607 (Iowa 1942). But I believe the majority takes an incorrect interpretive path today. Because that phrase, enacted in 1904, is notoriously ambiguous, the tools of statutory construction can help determine its meaning. *See State v. Ross*, 941 N.W.2d 341, 346 (Iowa 2020); 1904 Iowa Acts ch. 9, § 2.

First, our supreme court has liberally construed the veterans-preference statute because of the benefit it provides for people who have made the patriotic sacrifice to serve in the military. *Tusant v. City of Des Moines*, 300 N.W. 690, 694 (Iowa 1940). An early case declared the "central purpose" of the veteran-preference statute was to "insure to the veteran permanency of employment, and make him so far as possible independent of the changing whims and interests of

the officer or board under which he serves." *Kitterman v. Bd. of Supervisors of Wapello Cnty.*, 123 N.W. 740, 742 (Iowa 1909). "To hold otherwise," the court reasoned, would allow the appointing officer "to convert the position into a political asset of the successful party at each recurring election." *Id.*

Second, we must not let the exception in section 35C.8 swallow the general protections of the veterans-preference statute. "[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions." 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000). In fact, our case law has recognized that "the legislature did not intend for section [35C.8] to be a tool by which the rest of chapter [35C] could be loosely circumvented." *Richards v. Bd. of Control of State Insts.*, 170 N.W.2d 243, 245 (Iowa 1969).

With those two guides, let's examine the language of the exception. It exempts three categories of employees from receiving the veteran preference: (1) and (2) are "the position of private secretary or deputy of any official or department" and (3) is "any person holding a strictly confidential relation to the appointing officer." Iowa Code § 35C.8.

Because "a strictly confidential relation" is not defined in the code, we may refer to court decisions, similar statutes, dictionary definitions, and common usage. *See Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 516 (Iowa 2012). Court decisions first. Early on, our supreme court in *Brown v. State Printing Bd.*, 296 N.W. 719, 720 (Iowa 1941), borrowed a definition from a leading New York case:

> What is a "confidential relation" to the appointing officer? A complete definition may be difficult. We shall only attempt one in general terms. The meaning of "confidential" has two elements—

that of secrecy and that of trust and confidence. Confidential relations, in law, as defined by the Century Dictionary, is a relation of parties in which one is bound to act for the benefit of the other, and can take no advantage to himself from his acts relating to the interest of the other. Such a relation arises whenever a continuous trust is reposed by one person in the skill or integrity of another. The statute which we have under consideration has reference to officials, and the confidential relations mentioned undoubtedly have reference to official acts, and include not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another, their relations become confidential.

*People v. Palmer*, 46 N.E. 328, 329 (N.Y. 1897).

*Brown* embellished on the *Palmer* definition: "Where duties are not merely clerical and require skill, judgment, trust and confidence, the courts are inclined to regard the appointee to whom such duties are delegated as holding a strictly confidential relation to the appointing officer or board."[2]  296 N.W. at 720.  Citing *Brown*, the majority reasons that Copeland was "delegated duties that are statutorily assigned to the Adjutant General and 'require skill, judgment, trust and confidence' from his superiors."

In my view, we have stretched the *Brown* embellishment too far.  Not all employees who perform non-clerical duties that roughly fall within the job description of a higher officer should be exempt from the veterans-preference statute.  For starters, finding that Copeland falls under the exception ignores the word "strictly" in section 35C.8.  As our supreme court acknowledged, "There can

---

[2] Unlike this case, *Brown* was not a close call.  The court held that the state supervisor of printing, appointed by state printing board, was not entitled to benefits.  It summarized: "The statutes fairly imply a relation of strict confidence on the part of the superintendent toward the board that appoints him and at whose pleasure he serves."  *Brown*, 296 N.W. at 721.

be no question that the Legislature had a purpose in using the qualifying adverb, and it should be given its accustomed meaning." *Klatt*, 5 N.W.2d at 611. The dictionary defines "strictly" as "closely, precisely, rigorously, stringently, positively." Websters Third New International Dictionary 2261 (1993). To that end, by modifying "confidential relation" with the word "strictly" the legislature intended to limit the exception to employees acting in close association with the superior who delegated the position of confidence.

Overlooking that limitation, the majority relies on boilerplate characterizing the exception as "very broad" and "not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence." *Allen v. Wegman*, 254 N.W. 74, 79–80 (Iowa 1934) (quoting *Scott v. Brown*, 157 N.E. 64, 68 (Ind. App. 1927)).[3] Such reliance is shaky because *Scott* was interpreting "confidential relation" in a contract case alleging fraudulent inducement. *Scott*, 157 N.E. at 68. Plus, the Indiana court clarified that "it arises when a continuous trust is reposed by one person in the skill or integrity of another." *Id.* Even if that contract law formulation informs our statutory interpretation, nothing in this record shows that the adjutant general placed his personal confidence in Copeland. In fact, our record does not show that the adjutant general had ever met Copeland or had any personal or professional

---

[3] The majority notes that we cannot overrule *Allen*. Agreed. And we need not do so to grant Copeland relief. *Allen* rejected the need for a "specific association" in dicta. The court held that because Allen ran the bookkeeping department of the state treasurer's office, his position "involved strictly confidential relations with the head of the office." *Allen*, 254 N.W. at 80. Allen's close position of trust with the appointing officer was a far cry from the line-level security post held by Copeland.

exchanges with him.[4]  It also does not show how many security officers or similarly skilled employees worked for the department of public defense who would also be excluded from the veterans-preference protection.

Then there's context.  Consistent with the associated-words canon of construction, we should not read the third exception—a strictly confidential relation—in isolation from the other two categories.  *See Ross*, 941 N.W.2d at 348. Rather, we must view it alongside the exceptions for private secretaries and deputies.  Put another way, "the meanings of particular words may be indicated or controlled by associated words."  *Id.* (citation omitted).  Thus, because private secretaries and deputies are identifiable individuals in the immediate orbit of the appointed official or department head, the third category also should be limited to employees who have close and confidential ties to the appointing officer.  Focusing on any nebulous "relation" between the appointing officer and the employee renders the words "strictly confidential" meaningless.  *See id.* at 347.

Bottom line, the majority's unreasonably expansive reading of the exception undermines the beneficial purpose of the statute and threatens to deprive deserving veterans of the procedural protections of chapter 35C.

---

[4] The majority recites facts from *Klatt*, which held that a senior examiner had a confidential relation with the state auditor, though the examiner did not confer directly with the auditor "concerning the performance of his duties."  5 N.W.2d at 611.  But that decision made clear that the examiners held trusted positions as "closemouthed men, of ability, integrity and fidelity, since in their examinations and investigations they acquire knowledge of matters affecting not only public officials but also private individuals which is highly confidential, and should be disclosed to no one except as their duties require disclosure to their superiors."  *Id.*  And after those investigations, the examiners reported the results of their investigations to the state auditor.  Again, a far cry from Copeland's position as a security guard.