# IN THE SUPREME COURT OF IOWA

No. 21–0981

Submitted December 15, 2022—Filed March 10, 2023

**TOMMY MARION COPELAND,**

Appellant,

vs.

**STATE OF IOWA** and **IOWA AIR NATIONAL GUARD,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

An honorably-discharged veteran appeals the district court's determination that he was not entitled to protection under the Iowa Veterans Preference Statute. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

May, J., delivered the opinion of the court, in which all justices joined.

Charles Gribble, Christopher C. Stewart, and Haley Bryan (until withdrawal) of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant.

Brenna Bird, Attorney General, Jeffrey Peterzalek and Alan W. Nagel, Assistant Attorneys General, for appellees.

**MAY, Justice.**

Iowa honors our veterans through the veterans preference statute, Iowa Code chapter 35C. The preference gives veterans important advantages in obtaining and retaining public-sector jobs.

Like most laws, though, chapter 35C contains exceptions. One of them applies to veterans who "hold[] a strictly confidential relation to the appointing officer." Iowa Code § 35C.8 (2020).

Our interpretations of this exception have not been uniform. Often, we have read it quite broadly. We have suggested that it applies whenever the veteran's delegated duties "require skill, judgment, trust and confidence." *Brown v. State Printing Bd.*, 296 N.W. 719, 720 (Iowa 1941). And although the words of the exception require "a strictly confidential relation *to the appointing officer*," we have applied the exception to veterans who have no direct relationship with "the appointing officer." Iowa Code § 35C.8 (emphasis added).

Sometimes, though, we have read the exception more narrowly. In *Ervin v. Triplett,* we held that the exception did *not* apply to a veteran who worked as a police detective—a job that certainly requires skill, judgment, trust, and confidence. 18 N.W.2d 599, 602 (Iowa 1945). We reasoned that although the detective's work "may be of a confidential nature," the detective only reported to his supervisor—and *not* to "the appointing officer," the police commissioner. *Id.* at 601–02. Therefore, the detective could not fit within an exception for workers who hold "strictly confidential relation[s] *to the appointing officer.*" *Id.* at 602 (emphasis added); *see* Iowa Code § 35C.8.

We conclude that *Ervin*'s narrow reading is the better approach. It is more faithful to the words of the statute. And it prevents the exception from effectively swallowing the veterans preference by largely confining it to jobs that require "no discretion or responsibility." *Tusant v. City of Des Moines*, 300 N.W. 690, 698 (Iowa 1941) (Stiger, J., dissenting). Nothing in the Code suggests that our legislature intended such a limited reward for our veterans' valuable service.

Consistent with *Ervin* and the statutory text, we now hold that the exception cannot apply unless the veteran has a direct reporting relationship with the appointing officer. We vacate the court of appeals decision, reverse the district court's denial of petition for writ of certiorari, and remand for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Tommy Copeland is an honorably-discharged Army veteran. He was employed as an air base security guard at the Iowa Air National Guard base in Des Moines. He was part of a chain of command—Copeland reported to the security forces manager who, in turn, reported to the adjutant general and his deputies. The adjutant general is "the director of [Iowa's] department of public defense" and is charged with performing "all functions, responsibilities, powers, and duties concerning the military forces of the state of Iowa." Iowa Code § 29.1. *But cf. id.* § 29A.7 (providing that "[t]he governor is the commander in chief of the military forces").

The basic purpose of Copeland's position was to provide physical safety for the personnel and property at the air base. His duties included bearing arms,

accessing restricted areas, maintaining his security clearance, maintaining military-level-weapon qualifications, and maintaining less-than-lethal-force qualifications. He had to be able to run, climb stairs, and perform apprehension and restraint techniques. Important to this case, Copeland was required to pass a strenuous physical agility test. Copeland was terminated because he failed to pass the physical agility test four times.

Following his termination, Copeland commenced this action by filing a petition for writ of certiorari in the district court. Copeland alleged that because of his veteran status, the State was required to provide him with a hearing prior to his termination. By failing to do so, Copeland claimed, the State had violated the veterans preference statute.

The State resisted. It claimed that the veterans preference statute did not apply because—in the words of Iowa Code section 35C.8—Copeland held "a strictly confidential relation to the appointing officer."

In the Iowa Air National Guard, the "appointing officer" is the adjutant general, the head of Iowa's department of public defense. *Cf.* Iowa Code § 8A.401(1) (providing that, as used in chapter 8A, " '[*a*]*ppointing authority*' means the chairperson or person in charge of any state agency including, but not limited to, boards, bureaus, commissions, and departments, or an employee designated to act for an appointing authority"). The parties agree that the deputy adjutants general could also qualify as "the appointing officer." But no one claims that Copeland had any direct relationship with the deputy adjutants general or the adjutant general. Rather, it is undisputed that Copeland only reported to a

security forces manager. And it is undisputed that the security forces manager *was not* "the appointing officer."

Nevertheless, the district court found that—because the duties delegated to Copeland required skill, judgment, trust, and confidence—Copeland fit the section 35C.8 exception for "person[s] holding a strictly confidential relation to the appointing officer." Copeland appealed. We transferred the case to the court of appeals. A divided panel affirmed the district court. Copeland sought further review. We granted his petition.

**II. Discussion.**

**A. The Veterans Preference Statute.** Since the beginning of the twentieth century, Iowa "has recognized the enormous contributions made to our lives by veterans of our armed forces by giving preference to veterans seeking employment with the state, as well as employment with the cities, counties, and school corporations within the state." *Williams v. Bullock*, 960 N.W.2d 473, 478 (Iowa 2021) (quoting *Stammeyer v. Div. of Narcotics Enf't of Iowa Dep't of Pub. Safety*, 721 N.W.2d 541, 542 (Iowa 2006) (citing *Kitterman v. Bd. of Supervisors*, 115 N.W. 13 (Iowa 1908))). Today, the veterans preference is codified in Iowa Code chapter 35C. It provides veterans with advantages in obtaining and retaining public-sector jobs. Relevant here, section 35C.6 provides:

> No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a [veterans] preference is granted under [chapter 35C], shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges . . . .

Iowa Code § 35C.6.

Copeland believes that—because he's a veteran—section 35C.6 entitled him to a pretermination hearing. As explained, though, the veterans preference statute has exceptions. They appear in section 35C.8, which states, "Nothing in this chapter shall be construed to apply to the position of private secretary or deputy of any official or department, or to any person holding a strictly confidential relation to the appointing officer." *Id.* § 35C.8.

As noted, the question here is whether Copeland fell within the exception for "person[s] holding a strictly confidential relation to the appointing officer." *Id.* The question "is one of law, not of fact, and thus a matter for judicial construction and determination." *Richards v. Bd. of Control of State Insts.*, 170 N.W.2d 243, 245 (Iowa 1969).

This exception has a long history. It has been part of the veterans preference statute since its original enactment in 1904. 1904 Iowa Acts ch. 9, § 2 (codified at Iowa Code § 1056-a16 (Supp. 1907)). Over the decades, our court has considered the exception on many occasions. *See Andreano v. Gunter*, 110 N.W.2d 649, 654 (Iowa 1961) (compiling cases).

"The question" of when the exception applies "has always been troublesome." *Richards*, 170 N.W.2d at 245. In several cases, justices of this court have written dissenting opinions. *See, e.g., Allen*, 254 N.W. at 80 (Stevens, J., dissenting) ("In so far as the foregoing opinion of the majority holds that the position of bookkeeper in the office of the treasurer of state is confidential in character I do not agree. In my opinion it partakes in no degree of such relationship.").

The troublesome issue here is whether the exception can apply to veterans (like Copeland) who have no direct reporting relationship with "the appointing officer." Many of our opinions suggest that it can. Under this approach, "[t]he term 'confidential relation' is a very broad one and *is not at all confined to any specific association of the parties*, but applies generally to all persons who are associated by any relation of trust and confidence." *Richards*, 170 N.W.2d at 245 (emphasis added) (quoting *Brown*, 296 N.W. at 720). This "relation" is sufficient, we have held, whenever "the duties of the appointing officer [are] of such a character that it is impossible for [the appointing officer] to personally discharge them, and of necessity [the appointing officer is] compelled to [entrust] the performance of them largely to others," including the veteran. *Id.* (quoting *Brown* 296 N.W. at 720). The key limitation is that the duties delegated to the veteran must not be "merely clerical." *Id.* Rather, we have said, the duties must "require skill, judgment, trust and confidence." *Id.* (quoting *Brown* 296 N.W. at 720). Whenever duties of that sort are "delegated" to a veteran, we have been "inclined" to find that the veteran holds "a strictly confidential relation to the appointing officer or board." *Id.* (quoting *Brown* 296 N.W. at 720); *see also Dennis v. Bennet*, 140 N.W.2d 123, 127 (Iowa 1966) ("Where duties are not merely clerical and require skill, judgment, trust and confidence, the courts are inclined to regard the appointee to whom such duties are delegated as holding a strictly confidential relation to the appointing officer or board." (quoting *Brown*, 296 N.W. at 720)), *superseded by statute*, 1985 Iowa Acts ch. 50, § 1, *as recognized in Vislisel v. Univ. of Iowa*, 445 N.W.2d 771, 773 (Iowa 1989);

*Andreano*, 110 N.W.2d at 655 (same); *Bianco*, 80 N.W.2d at 754 (same); *Klatt*, 5 N.W.2d at 610 (same). We have followed this inclination no matter whether the veteran had any direct relationship with the appointing officer. *See, e.g., Klatt*, 5 N.W.2d at 611 (declining to adopt argument that the "relation between the employee and the appointing officer" must be "personal").

But this approach has not enjoyed unanimous support. Some justices have worried that such a broad reading of the exception would "practically wipe out" the veterans preference "for all positions with the possible exception of some minor jobs." *Id.* at 613 (Mitchell, J., dissenting) ("To hold that these auditors held a confidential position would take from under the act almost every position on the theory that it was a confidential position."). Consider Justice Stiger's dissent in *Tusant v. City of Des Moines*:

> A majority of the court believes the legislature intended to express to ex-service men the generous appreciation of the state of Iowa for their service under arms, for sacrifices suffered, for services rendered the state and nation in time of need, by giving them a preference in appointment and employment to subordinate positions only, limiting the preference to positions or employment requiring the exercise of substantially no discretion—as stated by the trial court "positions requiring plenty of muscle and no brains." I cannot believe the legislature intended to say to ex-service men that the privileges and preference deserved by them for services rendered the nation consisted only of inferior, subordinate positions. When it passed the act it was, of course, aware that ex-service men, citizens and residents of this state, constituted a fair cross-section of the culture and intelligence of the citizens of Iowa; that they occupied some of the highest and most important positions in the business, political, social and religious life of the state; that in the ranks of ex-soldiers and sailors there were men fully qualified to fill any elective or appointive office in the state. *There is no suggestion in the title to the act or the law that suggests the legislature intended to recognize and recompense ex-service men for services performed*

> *under arms by giving them a preference to subordinate positions requiring only manual labor or no discretion or responsibility.*

300 N.W. at 698 (emphasis added).

Justice Stiger was not alone in raising textual concerns. In his dissenting opinion in *Andreano v. Gunter*, Justice Thornton noted that the veterans preference statute actually contains three different exceptions: (1) an exception for "the position of private secretary . . . of any official or department," (2) an exception for "the position of . . . deputy of any official or department," and (3) an exception—at issue here—for "any person holding a strictly confidential relation to the appointing officer." *Andreano*, 110 N.W.2d at 658 (Thornton, J., dissenting) (quoting Iowa Code § 70.8 (1958) (now Iowa Code section 35C.8)). Thornton observed that "[t]he first two excepted positions are ones where there is a close relationship between the superior and subordinate in the matter of performance of duties," and "[w]hen the third is found in series with these[,] a similar relationship undoubtedly was intended." *Id.*

Justice Thornton also believed that the words of the third exception—"any person holding a strictly confidential relation to the appointing officer"—implied a "continuous trust" had been "reposed *by one person*" (the appointing officer) "in the skill or integrity of another" person (the veteran). *Id.* at 658–59 (emphasis added) (fourth quoting *Scott v. Brown*, 157 N.E. 64, 68 (Ind. App. 1927) (in banc)). Broader readings of the exception "overlooked" the phrase "to the appointing officer." *Id.* at 659.

For Justice Thornton, then, it was not enough that a veteran holds "important duties, requiring the exercise of intelligence or trained ability or

integrity." *Id.* (quoting 12 C.J. Confidential Relation 421, n.67(b) (1917)). Rather, he thought that the exception could only apply to veterans who have "a close relationship"—one of "personal contract"—with the appointing officer. *Id.* at 658–59 (noting that a " 'strictly confidential relation' . . . necessarily implies *personal contract* between the officer and his superior" (emphasis added)).

At least one of our majority opinions is consistent with this view. In *Ervin*, the question was whether a Des Moines police detective fit within the exception. 18 N.W.2d at 600. The district court answered in the negative, and we agreed:

> The work of a detective may be of a confidential nature and his reports may be confidential *to his immediate superior*. However, the record does not in any way disclose that a person holding the position of detective such as was held by the appellee in this case is one of 'strictly confidential relation *to the appointing officer*' which in the instant case is the commissioner of public safety.
>
> We do not find in the record where the [detective] did any work that was confidential *to the commissioner* and we are unable to reach the conclusion that the position of detective in the police department in the city of Des Moines is of such a confidential nature *to the appointing officer*[, the commissioner,] as to come within the [exception].

*Id.* at 601–02 (emphases added).

More recent opinions have also highlighted the specific relationship between the veteran and the appointing officer. For example, in *Bianco v. Mills*, we concluded that attorneys in Des Moines' legal department had a strictly confidential relationship with the city council. 80 N.W.2d at 755. "That the relationship between an attorney and those he represents is strictly confidential is not open to question," we noted. *Id.* at 754. In *Andreano*, we found a strictly confidential relationship between city manager and assistant police chief.

110 N.W.2d at 655 (majority opinion). We noted that the assistant police chief "might at any time assume the duties of the" police chief, who was obligated to make reports to—and was "clearly" in a confidential relationship with—the city manager. *Id.* at 655–56; *see id.* at 650–51 (noting reporting duties of police chief to city manager in "cities under the manager plan" (quoting Iowa Code § 365.19 (1958)); *see also Richards*, 170 N.W.2d at 245 (finding strictly confidential relationship between the superintendent of a state hospital school and the director of a specialized training project at the school, and describing direct interactions between the superintendent and the director).

**B. Resolution of Copeland's Case.** Based on the text of the statute, our prior opinions (including the views of our dissenting colleagues), and the record before us, we conclude that the exception does not apply to Army veteran Copeland. We place special reliance on *Ervin*, which is factually on point. Like the detective in *Ervin*, Copeland reported only to his "immediate superior," the security forces manager. *Ervin*, 18 N.W.2d at 601. Like the detective in *Ervin*, Copeland did not report to the appointing officer—the adjutant general (or any deputy). *Id.* at 601–02. So, like the detective in *Ervin*, Copeland did not "hold[] a strictly confidential *relation to the appointing officer*." Iowa Code § 35C.8 (emphasis added).

We acknowledge that today's holding conflicts with the approach described in many of our prior opinions. Nevertheless, we believe that our approach to the exception must be refined. To be clear, though, we do not abandon the exception's traditional requirements. As before, the veteran's job must involve

work that the appointing officer has delegated. *Richards*, 170 N.W.2d at 245. As before, the veteran's job must require "skill, judgment, trust and confidence." *Id.* These remain necessary—but they are not sufficient. Rather, going forward, the veteran must also have a direct reporting relationship to the appointing officer. An indirect relationship—through a chain of command or otherwise—does not qualify.

This approach conforms to traditional principles of statutory interpretation. We are bound by the "words chosen by the legislature." *State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017) (quoting *State v. Iowa Dist. Ct.*, 730 N.W.2d 677, 679 (Iowa 2007)); *see Holland v. State*, 115 N.W.2d 161, 164 (Iowa 1962) ("It is our duty to accept the law as the legislative body enacts it."). Every word "is to be given effect, if possible." *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 703 (Iowa 2022). According to its words, the exception can apply only to "person[s] holding a strictly confidential relation to the appointing officer." Iowa Code § 35C.8. Like the *Ervin* court, we do not believe that these words can encompass workers who have no direct relationship with "the appointing officer."

Context supports this view. As explained, section 35C.8 actually contains three exceptions. *Id.* ("Nothing in this chapter shall be construed to apply to the position of [1] *private secretary* or [2] *deputy* of any official or department, or [3] to any person holding a strictly confidential relation to the appointing officer." (emphases added)). And as Justice Thornton rightly noted: "The first two excepted positions are ones where there is a close relationship between the

superior and subordinate in the matter of performance of duties." *Andreano*, 110 N.W.2d at 658 (Thornton, J., dissenting). This implies that the third exception involves a "similar relationship," that is, a "close relationship between" the appointing officer and the veteran "in the matter of performance of duties." *Id.*; *see also State v. Ross*, 941 N.W.2d 341, 348 (Iowa 2020) (applying "our canon of construction *noscitur a sociis*," which "summarizes the rule of both language and law that the meanings of particular words may be indicated or controlled by associated words" (quoting *Peak v. Adams*, 799 N.W.2d 535, 547 (Iowa 2011))). *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195–98 (2012) (discussing the associated-words canon).

This view is also consistent with the text of the veterans preference statute "as a whole." *Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020) ("[W]e read statutes as a whole rather than looking at words and phrases in isolation." (alteration in original) (quoting *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015))). Our broader readings of the exception have denied the preference to any veteran whose delegated duties require "skill, judgment, trust and confidence." That view allowed the exception to fairly swallow the preference. It tended to limit the preference to relatively "minor jobs." *Klatt*, 5 N.W.2d at 613 (Mitchell, J., dissenting) (arguing that the broader view of the exclusion "would practically wipe out the [preference statute] for all positions with the possible exception of some minor jobs"). And yet nothing in chapter 35C supports such a narrow view of the preference. *Cf. Dennis*, 140 N.W.2d at 128 ("Surely the legislature did not intend [the exceptions in section 35C.8] to be a tool by which

the provisions of chapter [35C] could be loosely circumvented."). Nothing in the statute implies that "the legislature intended to recognize and recompense ex-service [members] for services performed under arms by giving them a preference" that only applies to jobs involving "no discretion or responsibility." *Tusant*, 300 N.W. at 698.

### III. Conclusion.

We hold that Iowa Code section 35C.8's exception for "person[s] holding a strictly confidential relation to the appointing officer" cannot apply unless the veteran has a direct reporting relationship to "the appointing officer." Because Copeland did not report to the appointing officer, the exception did not apply to him. And so Copeland was entitled to the protections of the veterans preference statute, including a pretermination hearing under section 35C.6. We vacate the court of appeals decision, reverse the district court's denial of petition for writ of certiorari, and remand for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**